**DAY & COMPANY, INC. & Bobby G. Day, Petitioners,**

v.

**TEXLAND PETROLEUM, INC., et al., Respondents.**

No. C–6007.

Supreme Court of Texas.

March 7, 1990.

Thomas J. Griffith, Ralph H. Brock and Bobby J. Moody, Lubbock, for petitioners.

Frank Douglass, Carroll Martin and Steve Selby, Austin, for respondents.

## OPINION ON MOTION FOR REHEARING

PHILLIPS, Chief Justice.

We grant the motion for rehearing of Texland Petroleum, Inc., withdraw our opinions and judgment of July 12, 1989, and substitute the following.

This is an appeal from a declaratory judgment establishing the validity of a mineral lease on an eighty acre tract of land and the ownership of the executive rights in a ten acre subtract. The court of appeals affirmed the summary judgment of

the trial court, holding (1) that the lease assigned to Texland Petroleum, Inc. (hereinafter "Texland") was valid as to the eighty mineral acres, and (2) that the executive right to half the minerals on the ten acre subtract, which had previously been severed and conveyed to Day & Company, Inc. (hereinafter "Day, Inc."), passed under a warranty deed to the grantee of Day, Inc. absent a reservation or exception. 718 S.W.2d 384. For the reasons that follow, we affirm the judgment of the court of appeals.

Mildred Keaton and Francell Young conveyed eighty acres of land by warranty deed to Day, Inc. By this deed, Keaton and Young reserved an undivided one-half mineral interest, but they expressly conveyed all executive rights. After the conveyance, therefore, Keaton and Young owned a non-executive, one-half mineral interest in the eighty acres and Day, Inc. owned the surface, one-half the minerals, and all of the executive right. Subsequently, Day, Inc. conveyed the eastern ten acres of the eighty acre tract to John and Genelda Shoaf, excepting and reserving an undivided one-fourth mineral interest. The deed also excepted the one-half mineral interest previously reserved to Keaton and Young. The deed, however, did not mention the executive right granted to Day, Inc. in the conveyance from Keaton and Young.

The Shoafs and Day, Inc. executed mineral leases. Texland subsequently acquired the leases covering all eighty mineral acres and completed a well on the Shoafs' ten acre tract. Day, Inc., however, believing that Texland's predecessor in interest had failed to pay delay rentals to maintain its lease to the non-executive mineral interest owned by Keaton and Young, attempted to exercise the executive right to this interest by leasing those minerals to Bobby Day, the president of Day, Inc. After executing this lease, Day. and Day, Inc. filed suit against Texland and the Shoafs, seeking a declaration that Day, Inc. owned three-fourths of the executive right to the minerals under the ten acre tract and that the lease from Day, Inc. to Day was valid. Both sides moved for summary judgment, and the trial court granted Texland's motion.

## I. The Executive Right Issue

Regarding ownership of the executive right in the ten acre tract, the trial court declared the Shoafs to be the holders of an undivided three-fourths interest and Day, Inc. to be the holder of the remaining one-fourth interest. The court of appeals affirmed, holding that the executive right severed from the one-half mineral interest owned by Keaton and Young had passed to the Shoafs under the general warranty deed from Day, Inc. because the executive right was "so significantly and intimately connected with the mineral estate as to be within the general rule that a warranty deed passes all estate owned by the grantor at the time of the conveyance unless there are restrictions or exceptions which reduce the estate conveyed." 718 S.W.2d at 389.

In this court, Day, Inc. argues that the court of appeals erred in treating the severed executive right as a property interest which was conveyed by implication as a result of its failure to except the right from the granting clause of a general warranty deed. Day, Inc. contends that a severed executive right is in the nature of a power and should transfer only by express assignment under applicable principles of contract law.

Texland, on the other hand, argues that an executive right is essentially an interest in property and thus is governed by property law principles. Texland suggests that the applicable principle here is the "greatest possible estate" rule, a common law property principle which states "that a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed." *Cockrell v. Texas Gulf Sulphur Co.*, 157 Tex. 10, 15, 299 S.W.2d 672, 675 (1957).

Day, Inc. relies principally on our decision in *Pan American Petroleum Corporation v. Cain*, 163 Tex. 323, 355 S.W.2d

506 (1962). In that case, the owner of the mineral estate conveyed an undivided one-fourth mineral interest to grantee, reserving to himself the right to execute leases on this one-fourth interest. The reservation of the executive right did not include the word "heirs and assigns." When the grantor died, the question arose whether the executive rights went to the successors to the grantee's non-executive mineral interest or passed to the grantor's heirs. By a vote of five to four, this court held in *Cain* that a severed executive right, retained by the grantor, did not survive his death and pass to his heirs, but rather passed to the owners of the mineral interest to which the right related.

The court reasoned that the executive right was not an interest in land, but was rather in the nature of a power of appointment. In describing the executive right as a power, the court wrote that "a power is an authority given to dispose of real or personal property of which the donor has the right of disposition. It is not an estate in the property, and its scope and extent is governed by the instrument creating it." *Id.* 355 S.W.2d at 510, quoting *Hupp v. Union Coal and Coke Co.*, 284 Pa. 529, 530, 131 A. 364, 365 (1925).

▮ Under the approach in *Cain*, a severed executive right appears to be a right based in contract, in the nature of a power, the duration of which is a matter of the parties' intent. In fact, the executive right is a property interest subject to principles of property law when bundled with the other rights and attributes comprising the mineral estate [1]. Once separated, however, *Cain* suggests that the executive right loses this nature, becoming subject to principles of contract and agency law. Un-

der *Cain*, the executive right is different from all the other attributes comprising the mineral estate. We believe that this analysis is wrong.

We erred in *Cain* when we compared the executive right to a power of appointment. Although the executive right is similar to a power, it is not a product of contract, but rather a creature of property rights. *See* 2 H. Williams & C. Meyers, *Oil and Gas Law*, § 338 (1989); 1 E. Kuntz, *Oil and Gas*, § 15.7 (1987). Even when it is severed from the other rights or attributes incident to the mineral estate, it remains an interest in property. As the dissent in *Cain* correctly noted, the executive right reserved by the grantor "was a property right, an interest in land, appurtenant to the mineral interest therein conveyed, and for the use and benefit of the mineral interest retained and owned by [the grantor]." *Cain*, 355 S.W.2d at 511 (Smith, J., dissenting).

We hold that the executive right is an interest in property, an incident and part of the mineral estate like the other attributes such as bonus, royalty and delay rentals. To the extent that it conflicts with this holding, *Pan American Petroleum Corporation v. Cain* is overruled.

▮ The transfer of executive rights is best governed by principles of real property and oil and gas law, and not by principles of contract law pertaining to agency and powers of attorney. In this case, therefore, the executive right, severed from the one-half mineral interest reserved by Keaton and Young and conveyed to Day, Inc., passed under Day, Inc.'s general warranty deed to the Shoafs because Day,

---

1. Other rights and attributes of the mineral estate include the right to receive delay rentals for the deferral of commencement of drilling by the lessee, the right to receive royalty, the right to share in other benefits secured from the lessee such as shut-in royalties, minimum royalties, production payments and the like, and correlative to the executive right, the right to develop and produce minerals. *See Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986); 1 H. Williams & C. Meyers, *Oil and Gas Law*, § 301 (1989); R. Hemingway, *Law of Oil and Gas*, §§ 2.1–2.5 (2d ed. 1983). When an undivided mineral interest is conveyed, reserved or excepted, it is presumed that all attributes remain with the mineral interest unless a contrary intention is expressed. Therefore, when a mineral interest is reserved or excepted in a deed, the executive right covering that interest is also retained unless specifically conveyed. *Martin v. Snuggs*, 302 S.W.2d 676, 678 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.). Likewise, when a mineral interest is conveyed, the executive right incident to that interest passes to the grantee unless specifically reserved. *Schlittler v. Smith*, 128 Tex. 628, 630–31, 101 S.W.2d 543, 544 (1937).

Inc. did not reserve or except such interest from the conveyance.

## II. The Mineral Lease Issue

■ The remaining issue in this case concerns the validity of a mineral lease between Day, Inc. and Bobby Day, covering the entire eighty acres. By this lease, Day, Inc. sought to lease the non-executive mineral interest owned by Keaton and Young to its president, Bobby Day. Day, Inc. had previously leased these same minerals, as well as its own mineral interest, to John Stringer for a primary term of five years. Although the Stringer lease was still in its primary term and had been maintained as to Day, Inc.'s mineral interest by the timely payment of delay rentals, Day, Inc. assumed, for reasons explained in the opinion of the court of appeals, that Keaton and Young had not been receiving their share of delay rentals and that the lease had therefore lapsed as to their one-half, non-executive mineral interest.

In fact, Keaton and Young had not been paid under the Stringer lease, nor were they even aware that Day, Inc. had leased their mineral interest. Keaton and Young did not learn of the Stringer lease until three years after its execution, when the lessee offered to pay them the amounts past due under that lease. Keaton and Young accepted the tendered late payment and ratified the Stringer lease in writing. Shortly thereafter, Day recorded a new mineral lease which purported to lease these same minerals to himself.

The question then is whether the ratifications of Keaton and Young revived the Stringer lease. Texland argues that the ratifications were effective, thereby giving it, as successor in interest to the Stringer lease, a superior claim to the Keaton and Young interest. Day, on the other hand, argues that the ratifications were ineffective because he recorded his lease from Day, Inc. before the ratifications of Keaton and Young were recorded. Day further claims he is a bona fide purchaser who, by his prior recordation, cut off the rights of Keaton and Young to ratify the prior lease. The court of appeals held that Day was not

a bona fide purchaser and that the Stringer lease was revived by the ratifications of Keaton and Young. We agree.

When Day took his lease, the Stringer lease was of record and its primary term had not yet expired. Although Keaton and Young had not been paid under this lease, record title did not reflect this omission. Furthermore, Keaton and Young accepted past due delay rentals and ratified the Stringer lease before Day took his lease and entered it of record. Because the Stringer lease was executed, recorded and revived before the Day lease, it is the superior lease. *See Brannon v. Gulf States Energy Corp.*, 562 S.W.2d 219, 222 (Tex. 1977); *Mitchell v. Simms*, 63 S.W.2d 371 (Tex.Comm'n App.1933, holding approved).

The judgment of the court of appeals is affirmed.