Lila McCALL, Appellant,

v.

Patricia McCALL, Mildred McCall
Fike, and MCDCO, Inc.,
Appellees.

No. 01–99–00926–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 29, 2000.

Rehearing Overruled Aug. 8, 2000.

Mary Jo Cantu, Tom Hutcheson, Houston, for appellant.

Anna E. Stool, O. Theodore Dinkins, Jr., Joe H. Reynolds, Thomas A. Zabel, Houston, for appellees.

Panel consists of Justices O'CONNOR, NUCHIA, and DUGGAN.*

## OPINION

MICHOL O'CONNOR, Justice.

Lila McCall (Lila), the appellant here and plaintiff below, sued Patricia McCall (Patricia), Mildred McCall Fike (Mildred), and MCDCO, Inc. (MCDCO), the appellees here and defendants below, for declaratory judgment, breach of fiduciary duty, an accounting, the creation of a constructive trust, unjust enrichment, and punitive damages, all arising from a royalty interest dispute. The trial court granted partial summary judgment in favor of Patricia and Mildred, declaring the deeds upon which Lila based her claim were not ambiguous and did not transfer the right to royalty interests in mineral estates other than the estates deeded.[1] We affirm.

### Factual and Procedural History

In 1975, a judgment was entered partitioning a 3,298.74 acre parcel of land (the 3,300 acre tract) into sixteen separate tracts (the 1975 Partition). Before the 1975 Partition, the 3,300 acre tract was commonly owned in both surface and mineral fee by three families: the Taubs, the Dwyers, and Mildred Powell McCall (Mrs. McCall). When the 1975 Partition was rendered, the 3,300 acre tract was subject to three oil and gas leases. The leases took effect in 1936, 1938, and 1940.[2]

Under the 1975 Partition, Mrs. McCall received title to tracts 4, 5, 9, 10, and 14. Mrs. McCall's tracts were burdened by a 20% royalty interest in favor of the Taubs and Dwyers in any leases that might thereafter be executed on any of the McCall tracts. Likewise, Mrs. McCall had a 10% royalty interest in both the Taub and Dwyer tracts. Regarding the leases, each party continued to own their royalties and other benefits in each of the tracts granted to the other parties. The parties' right to royalties under the field-wide gas unit, the Bammel Field Unit, also remained unchanged.[3]

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. After granting the defendants motion for partial summary judgment, the trial court granted the defendants motion to sever. Thus, making the trial court's order a final and appealable judgment.

2. When not referenced singularly, the three leases will be referred to as "the existing leases."

3. The Bammel Field Unit was created by a Unit Agreement signed January 1, 1966. The Bammel Field Unit is comprised of many leases, including the three leases on the 3,300 acre tract, and covers approximately 6,797 acres. The lands within the field-wide unit boundary lines include portions of the tracts awarded to Mrs. McCall under the 1975 Partition.

Each mineral estate in each of the fee tracts awarded to Mrs. McCall (the McCall tracts), though burdened, included (1) the right to continued royalties under the existing leases covering that tract, (2) the executive right to future leases covering the particular tract, and (3) the right to royalties under any future leases covering that tract.

Shortly after the 1975 Partition, Mrs. McCall, by four separate deeds, conveyed tracts numbers 9, 10, and 14 to her three children (Patricia, Verner, and Mildred) and Lila, her daughter-in-law. Mrs. McCall conveyed tracts numbers 4 and 5 to MCDCO, Inc.[4] The granting clause of each deed provided that Mrs. McCall:

> does GRANT, BARGAIN, SELL AND CONVEY that certain tract of land containing [acreage] in Harris County, Texas, as more particularly described in Exhibit A ... together with all improvements thereon ... and appurtenances thereto ... unto Grantees....

The children and Lila, by similar conveyances, then conveyed their tracts to MCDCO. None of the McCall deeds referenced Mrs. McCall's royalty interests in the Dwyer and Taub tracts under either the existing leases or future leases.

After executing the McCall deeds, Mrs. McCall continued to receive payments from the royalty interests from the Taub and Dwyer tracts under the existing leases. Mrs. McCall, as she did before the McCall deeds, continued to pay ad valorem taxes assessed against all her mineral and royalty interests.

In 1980, Mrs. McCall executed two mineral deeds. The deeds conveyed to the three children (but not to Lila), in equal shares, all of Mrs. McCall's interests "in and to the oil, gas and other minerals in and under that may be produced from the land and premises comprising that certain Unit in Harris County, Texas known as

the Bammel Field Unit" and undivided royalty and mineral interests in other lands not at issue here.

In 1981, Mrs. McCall died testate, leaving her estate in equal shares to her three children. In 1986, Verner (Lila's husband), Mrs. McCall's son, was jailed for contempt for refusing to give a proper accounting of estate assets as ordered. Shortly after his release, the probate court removed him as executor and appointed Patricia.

In her capacity as administratrix, Patricia filed suit against Verner for misappropriation of estate funds while he served as executor. To settle the misappropriation claims and to reimburse his sisters $328,040 in excess distributions to himself, Verner executed a deed to Mrs. McCall's estate conveying all of his interest in oil, gas and other minerals "in and under that may be produced from the lands and premises compromising ... the Bammel Field Unit...."

In 1987, Lila filed Chapter 11 bankruptcy. Lila's filed asset list did not name ownership of any mineral or royalty interests under the McCall deeds.

From 1976, when MCDCO was formed, until 1997, Lila and Verner (now deceased), collectively owned ⅓ of the issued and outstanding shares of stock in MCDCO. Patricia and Mildred each owned ⅓ of the stock.

In 1994, Enron, the operator of the Bammel Field Unit, drilled four wells on tracts owned by the Taubs and four wells on tracts owned by the Dwyers. A pooled unit of 650.72 acres was formed for these wells. This area included land covered by the 1936 and 1938 leases, but included no part of the McCall tracts. Only McCall tract numbers 4 and 5 are covered by any lease, the 1940 Lease.

By deed effective June 1, 1997, MCDCO conveyed to Lila, Patricia, and Mildred, in

4. MCDCO, then owned by Mrs. McCall, her three children, and Lila, was formed to devel-

op the McCall tracts.

equal shares, an undivided ⅓ interest in all oil, gas and other mineral then owned by MCDCO anywhere in Texas (including, without limitation, any bonuses, royalties, and rentals owed to MCDCO under any oil and gas leases).

From the beginning of production of the eight wells on the Taub and Dwyer tracts in 1993, until Lila filed this suit in 1997, Enron paid royalties to Patricia and Mildred.

Both parties filed motions for partial summary judgment. On March 8, 1999, the trial court granted partial summary judgment in favor of Patricia and Mildred, ruling that, as a matter of law, the McCall Deeds are not ambiguous, and they did not convey to the grantees any right to receive any royalties arising under the 1936, 1938, or 1940 Leases as to wells not located on one or more of the five McCall tracts. The trial court denied Lila's motion for partial summary judgment.

## Standard of Review

The summary judgment rule provides a method for summarily ending a case that involves only a question of law and no fact issues. Tex.R.App. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Cigna Ins. Co. v. Rubalcada,* 960 S.W.2d 408, 411 (Tex. App.—Houston [1st Dist.] 1998, no pet.). When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Ct. of Titus Cty. v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Rubalcada,* 960 S.W.2d at 411–12. We render such judgment as the trial court should have rendered.

Summary judgment is proper only when a movant establishes there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or it conclusively establishes all elements of an affirmative defense as a matter of law. *Johnson,* 891 S.W.2d at 644.

Once the movant has established a right to a summary judgment, the burden shifts to the nonmovant. *Marchal,* 859 S.W.2d at 412. The nonmovant must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Marchal,* 859 S.W.2d at 412.

We will affirm the summary judgment if any of the theories advanced in the defendant's motion for summary judgment are meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996); *Rubalcada,* 960 S.W.2d at 411.

## Arguments

In three points of error, Lila claims the trial court erred in holding that she owns no royalty interests in any portions of the pre-partition leases underlying the non-McCall Tracts. Specifically, Lila argues that the trial court should not have applied the rule of non-apportionment to these facts, and, in the alternative, the trial court erred in ruling as a matter of law that the McCall Deeds were not ambiguous.

Lila claims the trial court incorrectly interpreted paragraph six of the 1975 Partition, and, as a result, incorrectly ruled the McCall deeds were unambiguous as a matter of law. In regard to the parties' continued ownership of royalties under the existing leases, paragraph six of the 1975 Partition reads as follows:

> Each party in this Cause shall continue to own (and shall not be divested thereof by this Judgment) such party's present interest in all royalties and other pay-

ments which are payable (i) under presently existing mineral leases covering all or any part of Parcel of land or portion thereof awarded and decreed to any other party or parties in this Cause, and/or (ii) under the Unit Agreement, Bammel Gas Unit, Harris County, Texas. . . .

Lila interprets this paragraph as not severing the mineral estate from the McCall tracts. Rather, Lila claims it is clear that the 1975 Partition awarded each party a single bundle of property rights out of the 3,300 acre tract. This bundle, Lila argues, included the rights to royalties under the existing leases on the other parties' tracts. Therefore, Lila contends that when Mrs. McCall conveyed the tracts to her children, Lila, and MCDCO, the right to royalties from the other tracts, as part of the bundle, was conveyed as well.

The McCall deeds are worded as follows:

[Mrs. McCall] does GRANT, BARGAIN, SELL AND CONVEY that certain tract of land containing [acreage] in Harris County, Texas, as more particularly described in Exhibit A . . . together with all improvements thereon . . . and appurtenances thereto . . . unto Grantees. . . .

Lila argues it is significant that none of the McCall deeds reserved to the grantor any part of the leasehold, royalty, or other mineral interests underlying any part of the 3,300 acre tract. This, Lila claims, had the legal effect of transferring to MCDCO all of the grantor's *appurtenant* surface and mineral interests owned anywhere on the 3,300 acre tract, including the right to royalties under the existing leases. Although Mrs. McCall later conveyed the very mineral interests Lila argues were included in the McCall deeds, Lila claims this later deed was ineffective because of the earlier conveyance in the McCall deeds.

As summary judgment proof, Lila presented the affidavit of Robert Seale, Jr., Mrs. McCall's attorney at the time of the conveyance of the McCall tracts. Seale stated that one of Mrs. McCall's primary goals for deeding away the tracts was to decrease the size of her taxable estate. This, Lila claims, together with the wording of the 1975 Partition and the McCall deeds, at the very least, raises an issue as to whether Mrs. McCall intended to convey her royalties in other property to MCDCO under the McCall deeds.

In her motion for partial summary judgment, Patricia argued that Mrs. McCall's retained right to royalties in the Taub and Dwyer tracts under the existing leases, the Bammel Field Unit Agreement, and future leases (insofar as the leases or agreement cover all or part of the Taub and Dwyer tracts), were separate from the mineral and fee ownership of the McCall tracts awarded her by the 1975 Partition. As proof of this, Patricia pointed to the McCall deeds which do not reference any right to royalties under the existing leases under tracts other than the McCall tracts.

Patricia argued that Mrs. McCall, the Taubs, and the Dwyers received royalties in the tracts awarded to the others, not as a result of the 1975 Partition, but rather, as a result of the parties pre-partition ownership of royalties in the fee tracts awarded to the others. Patricia claimed the royalty interests were preserved for Mrs. McCall under the 1975 Partition by separating them from the mineral estates awarded to the others.

Patricia claimed the 1975 Partition and the McCall deeds are not ambiguous, and the royalty interests, as real property, must be sufficiently described in the conveyancing instrument.[5] Because the deeds to MCDCO did not make any reference to royalties under the existing leases regarding the Taub and Dwyer tracts, Patricia

5. Mildred, who suffered a series of strokes, was appointed an ad litem attorney in this case. In an effort to reduce fees, Mildred adopted Patricia's motion. Mildred has also adopted Patricia's arguments on appeal. In addressing the arguments, we will reference them as Patricia's.

contended they were not conveyed with the property.

In sum, Patricia claims that, as a result of the 1975 Partition, Mrs. McCall owned three separate interests: (1) the fee estate in the McCall tracts, including the mineral estate and all attributes of each particular tract;[6] (2) her preexisting interest in all royalties from the Dwyer and Taub tracts under the existing leases; and (3) royalties in the Dwyer and Taub tracts under future leases. Under this interpretation of the 1975 Partition, Patricia contends the McCall deeds are unambiguous; and they do not convey all of Mrs. McCall's royalty interests under the existing leases in the Taub and Dwyer tracts.

## Analysis

We must determine whether Patricia established the McCall deeds are unambiguous as a matter of law and whether they conveyed Mrs. McCall's royalty interests under the existing leases on the Taub and Dwyer tracts. Also, we must decide whether Lila raised any genuine issues of material fact to preclude summary judgment.

■■■ The interpretation and construction of the reservations in the McCall deeds is controlled by the intention which is expressed by the language used in the instrument. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex.1991). If the reservations are phrased in language that can be given a certain or legal meaning or interpretation, it is not ambiguous. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). As a result, the proper construction of the language in the deed is a question of law for the court. *Luckel*, 819 S.W.2d at 461; *Anderson &*

*Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800, 805 (1940).

It is notable that the McCall deeds, and not the 1975 Partition, were ruled unambiguous as a matter of law in the trial court's order granting summary judgment. However, our interpretation of 1975 Partition directly affects our analysis concerning whether the royalty interests at issue were "appurtenances" under the McCall deeds. Because the 1975 Partition forms the foundation in understanding whether the royalty interests on the Taub and Dwyer tracts were conveyed as appurtenances in the McCall deeds, we will address it as well.

Lila bases a large part of her argument on the reasoning in *Day & Co. v. Texland Petroleum, Inc.*, 786 S.W.2d 667 (Tex. 1990). She relies on *Day* for the proposition that the conveyance of all of Mrs. McCall's tracts to a common owner (MCDCO) included, as an *appurtenant* mineral right, Mrs. McCall's proportionate interest in any royalties due under the existing leases.

■■■ In *Day*, the granting party, Day, Inc., leased an 80–acre tract of land from a third party by general warranty deed. *Id.* at 668. The entire 80–acre tract was subject to the third party's one-half non-executive mineral interest. *Id.* The third party expressly conveyed all executive rights[7] to Day, Inc. *Id.* Later, when Day, Inc. leased ten of the 80 acres to the Shoafs, Day, Inc. excepted the third party's one-half mineral interest, as well as Day, Inc.'s own one-fourth mineral interest. *Id.* The deed, however, did not mention the executive right previously granted to Day, Inc. by the third party. *Id.*

The Shoafs and Day, Inc. later executed mineral leases. *Id.* Texland acquired the

---

**6.** Patricia asserts these attributes include the right to receive royalties from the McCall tracts under the existing leases, the reversionary interests in the existing leases and in any future leases she might execute as to the McCall tracts, and the exclusive right to execute future leases covering the McCall tracts

and to receive royalties from the McCall tracts under such leases.

**7.** The owner of the executive right possesses the exclusive right to lease the minerals. *Mathews v. Sun Oil Co.*, 425 S.W.2d 330, 332–33 (Tex.1968).

leases covering all 80 mineral acres and completed a well on the Shoafs 10–acre tract. *Id.* Later, Day, Inc., suspecting Texland's predecessor-in-interest did not properly pay delay rentals to maintain its lease to the non-executive one-half interest owned by the third party, attempted to exercise executive right to the interest by leasing the minerals to the president of Day, Inc. *Id.*

The Supreme Court held the executive right in the mineral estate passed to the Shoafs under the general warranty deed even though it was previously severed from the mineral estate and conveyed to another party, but unmentioned in the general warranty deed. *Id.* at 669. The Court found, although the executive right was severed from the mineral estate, "it remains an interest in property, an incident and part of the mineral estate like the other attributes such as bonus, royalty and delay rentals." *Id.* The Court held the previously severed, but not reserved or excepted, executive rights were conveyed under the general warranty deed. *Id.* at 669–70.

Lila claims the reasoning in *Day* applies to our facts because, similar to the executive rights not reserved or excepted, the royalty interests in the other tracts were not reserved in the McCall deeds, and thus, passed to MCDCO as appurtenant to the mineral estates under the existing leases.

Patricia argues that *Day* is not analogous to our facts. Patricia distinguishes *Day* because the executive rights granted only applied to the 10–acre tract leased-not the entire 80-acre tract. We agree with Patricia that the facts of *Day* are distinguishable.

While we understand Lila relies on *Day* as authority for the basic proposition that property rights not reserved or excepted pass under a general warranty deed, we will not apply *Day* here because the royalty interests Lila claims here are not *appurtenant* to the mineral interests conveyed in the McCall deeds.[8] The executive right to the 10–acre tract in *Day* was *appurtenant* to the mineral estate conveyed.

Paragraph six of the 1975 Partition states that "[e]ach party shall continue to own (and shall not be divested thereof by this Judgment) such party's present interest in all royalties" on the tracts awarded to the other parties. Nothing in the 1975 Partition or the McCall deeds support Lila's assertion that Mrs. McCall's royalty interests under the existing leases in the Taub and Dwyer tracts were appurtenant to the conveyed McCall tracts. The 1975 Partition did not grant one bundle of rights to Mrs. McCall, as Lila argues. Rather, the 1975 Partition granted to Mrs. McCall her continued ownership in the royalties at issue—separate from the granting of the McCall tracts in the partition.

Lila claims there is no case supporting Patricia's stance that the claimed royalties are not appurtenant. Patricia, however, relies on *Avery v. Moore*, 150 W.Va. 136, 144 S.E.2d 434 (1965), as general support for her contention. Lila argues the case is easily distinguishable and lends no support to Patricia's contentions.

In *Avery*, the plaintiff owned the surface estate of a 50–acre tract of land. *Id.* at 436. The plaintiff's surface estate had been part of a larger tract of land that was

8.  In *Balcar v. Lee County Cotton Oil Co.*, 193 S.W. 1094, 1095 (Tex.Civ.App.—Austin 1917), the Court defined "appurtenance" as follows:

    A thing belonging to another thing as principal, and which passes as incident to the principal thing. A thing used with, and related to, or dependent upon another thing more worthy, and agreeing in its nature and quality with the thing whereunto it is appendant or appurtenant. It is therefore limited to that which is necessary to the enjoyment of the principal thing granted.

    . . .

    An appurtenance is that only which is incidental or indispensable to the proper use of the premises demised. A mere conveyance does not create an appurtenance. (Citations omitted)

partitioned into five tracts. *Id.* The plaintiff held a ⅕ mineral interest in each of the five parcels of land. *Id.* The other ⅘ of the mineral estate was owned by the other owners who were a part of the partition. *Id.* Later, the plaintiff conveyed the 50 acres to the defendant. *Id.* at 437.

The plaintiff sought a declaratory judgment for a determination of ownership as between herself and various defendants of interest in oil and gas underneath a certain parcel of land conveyed to one of the defendants. *Id.* at 434. The court held the following:

> A deed conveying a tract of land of fifty acres ... which is subject to a provision in a prior partition deed which entitles the grantor and other owners of identical undivided interests in the oil and gas within and under all the tracts involved in the partition of a larger tract into five parcels, one of which is the fifty acre tract ... operates to grant and convey to the grantee in the such deed all of the right, title, interest and estate of the grantor in and to the oil and gas within and under the fifty acre tract, subject to the right of the owners of each of the four tracts to participate, to the extent of an undivided one-fifth interest, in the royalty when produced from the oil and gas within and under the fifty acre tract; *but such deed does not grant and convey to the grantee any interest of the grantor in and to the oil and gas within and under all or any of the other four tracts involved in the partition of the larger tract of land.*

*Id.* at 438. (Emphasis added.)

The court made it clear that a deed conveying a 50–acre tract of land partitioned from a larger tract conveys only the right, title, and interest of the grantor in and to the oil and gas within and under the

50–acre tract and does not convey the grantor's royalty interests held in the other tracts as a result of the earlier partition. While *Avery* does not discuss the legal meaning of "appurtenance," we agree with Patricia that the reasoning supports her argument.

The McCall deeds conveyed the McCall tracts with "appurtenances thereto." As stated previously, this language is the basis of Lila's contention that royalties from the other parties' tracts were a part of the McCall deeds. Lila argues that, at the very least, this language creates an ambiguity.

▮ The question of whether a contract is ambiguous is one of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex.1980). In the interpretation of contracts, the primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *Id.* If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *Id.* If, after applying the established rules of interpretation, a written instrument remains reasonably susceptible to more than one meaning, extraneous evidence is admissible to determine the true meaning of the instrument. *Id.*

▮ Our reading of the 1975 Partition as not including the royalty interests at issue as appurtenant to the McCall tracts, renders the McCall deeds unambiguous. This is so because the only question of ambiguity focused on the inclusion in the McCall deeds of the "appurtenances therein" language referencing the McCall tracts.[9] We find the trial court did not err in holding the McCall deeds were unambiguous as a matter of law.

9. We will not address Lila's summary judgment proof affidavit of Mrs. McCall's attorney, who claims Mrs. McCall intended to convey all her royalty interests relating to the 3,300 acre tract. Even assuming this affidavit is accurate, this proof is inadmissible because, where there is no claim of any fraud, accident or mistake, parol evidence is inadmissible to vary, add to, or contradict the terms of an unambiguous agreement. *Nowlin v. Frost Nat'l Bank,* 908 S.W.2d 283, 286 (Tex.App.—Houston [1st Dist.] 1995, no writ) (citing *Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948, 952 (1960)).

Where there is no ambiguity, disagreement over the interpretation of the reservation will not make it ambiguous, *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 727 (Tex.1981), for a party's construction is immaterial. *Id.* at 732.

The court's primary duty when construing an unambiguous deed is to ascertain the intent of the parties from the "four corners" of the deed. *Luckel*, 819 S.W.2d at 461. Under the "four corners rule," the intention of the parties, especially that of the grantor, will be gathered from the instrument as a whole and not from isolated parts of the instrument. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex.1995); *Texas Pac. Coal & Oil Co. v. Masterson*, 160 Tex. 548, 334 S.W.2d 436, 439 (1960).

Under our interpretation of the 1975 Partition, and applying the four corners rule to the McCall deeds, we find the trial court did not err in holding that the royalty interests at issue were not conveyed in the McCall deeds.

We affirm the judgment of the trial court.