COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| ANADARKO PETROLEUM CORPORATION, | § | No. 08-11-00238-CV |
| Appellant, | § | Appeal from the |
| v. | § | 143rd Judicial District Court |
| | § | of Loving County, Texas |
| BNW PROPERTY CO., | § | (TC#06-08-745-CVL) |
| Appellee. | § | |

## **O P I N I O N**

The issue in this appeal is whether two deeds that conveyed a 1/3rd mineral interest also conveyed a 4/9th executive right incident to the mineral interest. Appellant Anadarko Petroleum Corp. argues that the entire 4/9ths executive right passed under the deeds. Appellee BNW Property Co. takes a contrary position, contending that only a 1/3rd (3/9ths) executive right passed under the deeds and the remaining undivided 1/9th executive right did not so pass.[1] Agreeing with BNW, the trial court ruled that the remaining undivided 1/9th executive right did not pass under the deeds. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The common source of the interests at issue was Will P. Edwards, who conveyed to J.A. Haley 1/4th of his mineral estate. Edwards expressly reserved the other 3/4ths of the mineral estate and retained the executive rights to the entire mineral estate. After Edwards's death, his

---

[1] A 1/3rd interest is equal to a 3/9ths interest. Thus, if, as BNW maintains, only a 1/3rd (3/9ths) executive right was conveyed, then a 1/9th executive right remained because 4/9ths minus 3/9ths equals 1/9th.

interests were partitioned among three parties. One of those parties was the Beckhams, who inherited 4/9ths of Edwards's remaining 3/4ths mineral estate, *i.e.*, 1/3rd, plus 4/9ths of the executive right previously retained by Edwards, 3/9ths of which was attributable to the 3/4ths mineral estate previously reserved and 1/9th attributable to the 1/4th mineral estate previously conveyed.[2] After the Beckhams' deaths, the Beckhams' successors executed two separate deeds conveying to Earl Vest the 1/3rd mineral interest owned by the Beckhams. The deeds, however, were silent as to the 4/9ths executive right the Beckhams owned.[3] Following a bench trial on stipulated facts, the trial court rendered judgment in favor of BNW and against Anadarko. Anadarko timely appealed, bringing two issues. In its first issue, Anadarko contends that the trial court erred, as a matter of law, in concluding that the remaining undivided 1/9th executive right did not pass under the two deeds. In its second issue, Anadarko argues that we "should hold invalid [BNW's] claimed implicit reservation of a 1/9th executive interest because the reservation of a wholly naked executive interest violates Texas law and public policy." Because we sustain Anadarko's first issue, we need not address its remaining issue.

## STANDARD OF REVIEW

The trial court's decision was based upon stipulated facts. Given that the construction of an unambiguous deed is a question of law, the standard of review is *de novo*.[4] *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)(holding that the construction of an unambiguous deed is a question of law); *Karm v. City of Castroville*, 219 S.W.3d 61, 63 (Tex.App.--San Antonio 2006,

---

[2] The Beckhams inherited 1/3rd of Edward's mineral estate because 4/9ths times 3/4ths equals 12/36ths, which yields a 1/3rd interest. The Beckhams' inherited 4/9ths of Edward's executive rights because the executive right attributable to the 3/4ths mineral estate reserved by Edwards equals 12/36ths (4/9ths times 3/4ths) and the executive right attributable to the 1/4th mineral estate conveyed to Haley equals 4/36ths (4/9ths times 1/4th). When added together, 12/36ths plus 4/36ths equals 16/36ths, which yields a 4/9ths interest.

[3] Through subsequent conveyances not relevant to this appeal, Anadarko and BNW each acquired their respective mineral interest.

[4] Neither party contends that the deed is ambiguous.

2

no pet.)("To the extent that the issues involved stipulated facts and only questions of law were presented to the trial court, this court reviews the trial court's decision de novo.").

## DEED CONSTRUCTION:   THE EXECUTIVE RIGHT

In arguing that the trial court erred, as a matter of law, in construing the two deeds as conveying only the executive right incident to the 1/3rd mineral estate, *i.e.*, a 3/9ths executive interest, and not the entire 4/9th executive interest, Anadarko asserts that the trial court's conclusion "contravenes the Texas Supreme Court's decision in [*Day & Co., Inc. v. Texland Petroleum, Inc.*, 786 S.W.2d 667 (Tex. 1990)]."   We agree.

### *Applicable Law*

Our primary obligation is to determine the parties' intent as expressed within the four corners of the deed.   *Luckel*, 819 S.W.2d at 461.   In seeking to ascertain the parties' intent, we must attempt to harmonize all parts of a deed, even if different parts of the deed appear contradictory or inconsistent.   *Id*. at 462.   Construing the instrument to give effect to all of its provisions honors the parties' intent that every clause has some effect and in some measure evidences their agreement.   *Id*.   Accordingly, we may not strike any part of the deed, unless there is an irreconcilable conflict wherein one part of the deed destroys the effect of another part.   *Id*.

The mineral interest at issue here is the executive right, which provides its owner the exclusive right to execute oil and gas leases.   *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). As one of the five interests comprising the mineral estate, the executive right is a separate and distinct property interest, which may be conveyed or reserved separately and/or conveyed or reserved relative to any of the other interests.[5]   *See Concord Oil Co. v. Pennzoil Exploration &*

---

[5]  The five interests of a mineral estate are: (1) the right to develop (the right of ingress and egress); (2) the right to lease (the executive right); (3) the right to receive bonus payments; (4) the right to receive delay rentals; and (5) the right to receive royalty payments.   *Altman*, 712 S.W.2d at 118.

*Prod. Co.*, 966 S.W.2d 451, 467 (Tex. 1998); *Day & Co., Inc. v. Texland Petroleum, Inc.*, 786 S.W.2d 667, 669-70 (Tex. 1990); *Altman*, 712 S.W.2d at 118-19.

Like any other mineral interest, the executive right is governed by principles of real property. *Day & Co., Inc.*, 786 S.W.2d at 668-69. Pursuant to these principles, when an undivided mineral interest is conveyed, reserved, or excepted, it is presumed that all attributes remain with the mineral interest unless a contrary intention is expressed. *Id*. at 669 n.1. Therefore, when a mineral interest is reserved or excepted in a deed, the executive right relative to that interest is also retained unless specifically conveyed. *Id.* Likewise, when a mineral interest is conveyed, the executive right incident to that interest is also conveyed unless specifically reserved. *Id*. Accordingly, unless executive rights are expressly reserved or excepted in a deed, they pass under the deed, even if their proportion is greater than the mineral interest conveyed. *See id*. at 669-70; *Lesley v. Veteransland Board of State*, 352 S.W.3d 479, 486-87 (Tex. 2011).

### *Discussion*

Rather than "naked" executive rights, *i.e.*, executive rights held by a party with no accompanying mineral interest, the issue here concerns ownership of executive rights arising from grants that do not mention executive rights. Such issues are governed by the Texas Supreme Court's holdings in *Day & Co., Inc.* and *Lesley*.

In *Day & Co., Inc.*, the Court held that executive rights not expressly reserved or excepted in a deed pass under the deed. 786 S.W.2d at 669-70. There, Day & Co. acquired an 80-acre tract of land from a third party by warranty deed. *Id*. at 668. The deed reserved an undivided 1/2 mineral interest, but conveyed all of the executive rights. *Id*. Later, Day & Co. conveyed ten acres to the Shoafs by warranty deed. *Id*. The deed reserved an undivided 1/4th mineral interest

4

for Day & Co. and identified the previously reserved 1/2 non-executive mineral interest. *Id.* The deed, however, neither mentioned the executive right previously granted to Day & Co. nor reserved those rights. *Id.*

Both Day & Co. and the Shoafs executed mineral leases. *Id.* Texland acquired the leases to the entire 80-acre tract and completed a well on the Shoafs' 10-acre subtract. *Id.* Claiming that Texland's predecessor-in-interest had not maintained its lease on the undivided 1/2 non-executive mineral interest, Day & Co. attempted to exercise the executive right to the mineral interest. *Id.* Day & Co. asserted that it owned the executive right to this mineral interest because the severed executive right was in the nature of a power of appointment. *Id.* As a result, it could only be transferred by express assignment under contract principles and not by implication under principles of real property. *Id.* Texland asserted that because the executive right to the undivided 1/2 non-executive mineral interest was not expressly reserved or excepted in the deed, the executive right passed by implication to the Shoafs. *Id.* The Texas Supreme Court held that the executive right to the undivided 1/2 non-executive mineral interest passed to the Shoafs under the warranty deed, even though the right was previously severed from the mineral estate, conveyed to another party, and unmentioned in the warranty deed. *Id.* at 669-70.

In *Lesley*, the Texas Supreme Court again held that executive rights not expressly reserved or excepted in a deed pass under the deed. 352 S.W.3d at 486-87. There, a developer named Bluegreen acquired from Lesley approximately 4,100 acres of land to develop a residential subdivision. *Lesley,* 352 S.W.3d at 481, 484. Lesley's deeds reserved part of her undivided 1/2 mineral interest, but conveyed the executive right to the entire mineral estate. *Id.* at 481, 484-85. When developing the subdivision, Bluegreen imposed restrictive covenants to limit oil and gas

5

development to protect lot owners from intrusive exploratory, drilling, and production activities. *Id*. at 481. Bluegreen's deeds conveying the lots to the owners included its mineral interest, but excepted the mineral interests previously reserved to Lesley and the owners of the other half of the mineral estate. *Id* at 482, 486. The deeds, however, did not mention the executive right. *Id*.

The discovery and exploration of the Barnett Shale prompted Lesley and the owners of the other half of the mineral estate to sue Bluegreen for imposing restrictive covenants that prevented mineral development. *Id*. at 482. One of the issues in the lawsuit was whether Bluegreen's deeds conveyed the executive right to the lot owners. *Id*. at 484. The court held that because the deeds did not except the executive right, but merely subjected its exercise to the covenant's limitations, "[b]y the rules of *[Day & Co., Inc.]*, Bluegreen's deed to each lot conveyed the executive right covering both the lot owner's mineral interest and [Lesley's mineral interest and that of the owners of the other half of the mineral estate]. . . ." *Id*. at 486-87.

The facts of this case compel an outcome identical to those in *Day & Co., Inc.* and *Lesley*. Here, the original grantor conveyed part of his mineral estate, but expressly reserved an interest in it. Although the original grantor in this case did not convey any of his executive rights, a portion of the executive rights were inherited by the subsequent grantors, thus placing these grantors in a position similar to that of the subsequent grantors in *Day & Co., Inc.* and *Lesley*. Importantly, like the subsequent grantors in *Day & Co., Inc.* and *Lesley*, the subsequent grantors here conveyed their interest in the mineral estate in two deeds that, like the deeds in *Day & Co., Inc.* and *Lesley*, were silent as to the executive right. The two deeds in dispute here conveyed to Vest the 4/9ths executive right owned by the Beckhams because the deeds did not expressly reserve or except the executive right. *See Day & Co., Inc.*, 786 S.W.2d at 669-70; *Lesley*, 352 S.W.3d at 486-87.

6

In its brief, BNW does not argue that *Day & Co., Inc.* and *Lesley* are inapplicable. Instead, BNW argues that it is unreasonable to conclude that the parties intended to convey the entire executive right owned by the Beckhams when the deeds in dispute are construed pursuant to the principles of deed construction established in *Luckel*. BNW is correct that nothing in the deeds compels the conclusion that the parties intended to convey all of the executive rights owned by the Beckhams. By the same token, however, nothing in the deeds bars the opposite conclusion: that the parties *did not* intend to convey all of the executive rights owned by the Beckhams.

As noted above, the deeds are silent as to the executive rights owned by the Beckhams. Moreover, nothing in the deeds' language reveals the parties' intent regarding the executive rights.[6] Although the "granting" clause, the "subject to" clause, and the "future lease" clauses in each deed consistently identify the mineral estate conveyed as the 1/3rd mineral estate in the "property" or "lands," none of these clauses provides any guidance in ascertaining whether the parties intended to grant the entire executive right or only that incident to the conveyance.[7] Likewise, although the habendum clause in each deed delineates the extent of the interest being granted as the 1/3rd mineral estate and all the rights and appurtenances "thereto in any wise

---

[6] The two deeds in dispute here are, in essence, three-paragraph deeds. Each deed includes: (1) a "granting" clause, which is similar to other real property conveyances; (2) a "subject-to" clause, which explains that the conveyance is subject to an existing lease; and (3) a "future lease" clause, which provides for ownership rights after the existing lease expires. *See Hernandez v. El Paso Production Co.*, No. 13-09-184-CV, 2011 WL 1442991, *4 (Tex.App.--Corpus Christi Apr. 14, 2011, pet. denied)(mem. op.)(explaining the form of such deeds). Each deed also contains a habendum clause, which is "[t]he part of an instrument, such as a deed or will, that defines the extent of the interest being granted and any conditions affecting the grant." Black's Law Dictionary 778 (9th ed. 2009).

[7] The "granting" clause in each deed conveys to Vest a 1/3rd "interest in the oil, gas and other minerals" in the tracts of land relevant to this case. The "subject to" clause in each deed covers and includes all of the oil royalty and gas rental or royalty due and to be paid under the terms of the then-existing lease on the tracts. The "future lease" clause in each deed provides that the oil, gas, and mineral privileges are to be owned entirely by Vest after the lease then in existence expires.

belonging," the clause fails to identify what those rights and appurtenances are.[8]   Consequently, this clause, like the others, does not provide any guidance in ascertaining whether the parties intended to grant the entire executive right or only that incident to the conveyance.   Indeed, it is precisely because the 4/9ths executive right was neither reserved nor excepted in the deeds that, pursuant to *Day & Co., Inc.* and *Lesley*, it passed to Vest.

Based on the foregoing, we are not persuaded by BNW's argument that the "four corners" of each deed establishes that the parties intended to grant only the executive right incident to the 1/3rd mineral estate conveyed to Vest.   Accordingly, the trial court erred in concluding that only the executive right incident to the 1/3rd mineral estate passed under the deeds and the remaining 1/9th did not.   We therefore sustain Anadarko's first issue.   Having done so, we do not find it necessary to reach Anadarko's second issue.   *See* TEX.R.APP.P. 47.1.

## CONCLUSION

We reverse the trial court's judgment and render a take-nothing judgment in favor of Anadarko Petroleum Corp.


November 30, 2012
                                                    CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

---

[8]  The habendum clause in each deed provides that Vest is "TO HAVE AND TO HOLD" the right and title to the specific tracts of property in which the Beckhams owned a 1/3rd mineral interest, "together with all and singular the rights and appurtenances thereto in any wise belonging . . . ."

8