COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 ANADARKO PETROLEUM CORPORATION,
  
                             Appellant,
  
 v.
  
  
 BNW PROPERTY CO.,
  
                            
 Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 § 
  
 §
 
 
  
  
 No. 08-11-00238-CV
  
 Appeal from the
  
 143rd
 Judicial District Court 
  
 of Loving
 County, Texas 
  
 (TC#06-08-745-CVL) 
  
 
 


 

O
P I N I O N

            The issue in this appeal
is whether two deeds that conveyed a 1/3rd mineral interest also conveyed a 4/9th
executive right incident to the mineral interest.  Appellant Anadarko Petroleum Corp. argues that
the entire 4/9ths executive right passed under the deeds.  Appellee BNW Property Co. takes a contrary position,
contending that only a 1/3rd (3/9ths) executive right passed under the deeds and
the remaining undivided 1/9th executive right did not so pass.[1]  Agreeing with BNW, the trial court ruled that
the remaining undivided 1/9th executive right did not pass under the
deeds.  We reverse.

FACTUAL
AND PROCEDURAL BACKGROUND

The common source of the interests at issue
was Will P. Edwards, who conveyed to J.A. Haley 1/4th of his mineral
estate.  Edwards expressly reserved the
other 3/4ths of the mineral estate and retained the executive rights to the
entire mineral estate.  After Edwards’s
death, his interests were partitioned among three parties.  One of those parties was the Beckhams, who inherited 4/9ths of Edwards’s remaining
3/4ths mineral estate, i.e., 1/3rd,
plus 4/9ths of the executive right previously retained by Edwards, 3/9ths of
which was attributable to the 3/4ths mineral estate previously reserved and
1/9th attributable to the 1/4th mineral estate previously conveyed.[2]  After the Beckhams’
deaths, the Beckhams’ successors executed two
separate deeds conveying to Earl Vest the 1/3rd mineral interest owned by the Beckhams.  The deeds,
however, were silent as to the 4/9ths executive right the Beckhams
owned.[3]  Following a bench trial on stipulated facts,
the trial court rendered judgment in favor of BNW and against Anadarko.  Anadarko timely appealed, bringing two
issues.  In its first issue, Anadarko
contends that the trial court erred, as a matter of law, in concluding that the
remaining undivided 1/9th executive right did not pass under the two
deeds.  In its second issue, Anadarko
argues that we “should hold invalid [BNW’s] claimed implicit reservation of a
1/9th executive interest because the reservation of a wholly naked executive
interest violates Texas law and public policy.” 
Because we sustain Anadarko’s first issue, we need not address its
remaining issue.

STANDARD
OF REVIEW

            The trial court’s decision was based upon
stipulated facts.  Given that the construction
of an unambiguous deed is a question of law, the standard of review is de novo.[4]  See Luckel v. White, 819 S.W.2d 459, 461 (Tex. 1991)(holding that the construction of an unambiguous deed is a
question of law); Karm v. City of Castroville, 219 S.W.3d 61,
63 (Tex.App.--San Antonio 2006, no pet.)(“To the
extent that the issues involved stipulated facts and only questions of law were
presented to the trial court, this court reviews the trial court’s decision de
novo.”).

DEED
CONSTRUCTION:  THE EXECUTIVE RIGHT

            In arguing that the
trial court erred, as a matter of law, in construing the two deeds as conveying
only the executive right incident to the 1/3rd mineral estate, i.e., a 3/9ths executive interest, and
not the entire 4/9th executive interest, Anadarko asserts that the trial
court’s conclusion “contravenes the Texas Supreme Court’s decision in [Day & Co., Inc. v. Texland
Petroleum, Inc., 786 S.W.2d 667 (Tex. 1990)].”  We agree.

Applicable Law

Our primary obligation is to determine the parties’
intent as expressed within the four corners of the deed.  Luckel, 819 S.W.2d at 461.  In seeking to ascertain the parties’ intent, we
must attempt to harmonize all parts of a deed, even if different parts of the
deed appear contradictory or inconsistent. 
Id. at 462.  Construing the instrument to give effect to
all of its provisions honors the parties’ intent that every clause has some
effect and in some measure evidences their agreement.  Id.  Accordingly, we may not strike any part of
the deed, unless there is an irreconcilable conflict wherein one part of the
deed destroys the effect of another part. 
Id.

The mineral interest at issue here is the
executive right, which provides its owner the exclusive right to execute oil
and gas leases.  Altman v. Blake, 712 S.W.2d 117, 118
(Tex. 1986).  As one of the five
interests comprising the mineral estate, the executive right is a separate and
distinct property interest, which may be conveyed or reserved separately and/or
conveyed or reserved relative to any of the other interests.[5]  See Concord Oil Co. v. Pennzoil Exploration & Prod. Co., 966 S.W.2d 451, 467 (Tex. 1998); Day &
Co., Inc. v. Texland Petroleum, Inc., 786 S.W.2d 667, 669-70 (Tex. 1990); Altman, 712 S.W.2d at 118-19.

Like any other mineral interest, the
executive right is governed by principles of real property.  Day & Co., Inc., 786 S.W.2d at 668-69.  Pursuant to these principles, when an
undivided mineral interest is conveyed, reserved, or excepted, it is presumed
that all attributes remain with the mineral interest unless a contrary
intention is expressed.  Id. at 669 n.1.  Therefore, when a mineral interest is
reserved or excepted in a deed, the executive right relative
to that interest is also retained unless specifically conveyed.  Id.  Likewise, when a mineral interest is
conveyed, the executive right incident to that interest is also conveyed unless
specifically reserved.  Id. 
Accordingly, unless executive rights are expressly reserved or excepted in a deed, they pass under the deed, even if their
proportion is greater than the mineral interest conveyed.  See id.
at 669-70; Lesley
v. Veteransland Board of State, 352 S.W.3d 479,
486-87 (Tex. 2011).

Discussion

Rather than “naked” executive rights, i.e., executive rights held by a party
with no accompanying mineral interest, the issue here concerns ownership of
executive rights arising from grants that do not mention executive rights.  Such issues are governed by the Texas Supreme
Court’s holdings in Day & Co., Inc.
and Lesley.

In Day
& Co., Inc., the Court held that executive rights not expressly
reserved or excepted in a deed pass under the
deed.  786 S.W.2d at
669-70.  There, Day & Co.
acquired an 80-acre tract of land from a third party by warranty deed.  Id. at 668.  The deed
reserved an undivided 1/2 mineral interest, but conveyed all of the executive
rights.  Id.  Later, Day & Co. conveyed
ten acres to the Shoafs by warranty deed.  Id.  The deed reserved an undivided 1/4th mineral
interest for Day & Co. and identified the previously reserved 1/2
non-executive mineral interest.  Id. 
The deed, however, neither mentioned the executive right previously
granted to Day & Co. nor reserved those rights.  Id.

Both Day & Co. and the Shoafs executed mineral leases.  Id.  Texland acquired
the leases to the entire 80-acre tract and completed a well on the Shoafs’ 10-acre subtract. 
Id.  Claiming that Texland’s
predecessor-in-interest had not maintained its lease on the undivided 1/2
non-executive mineral interest, Day & Co. attempted to exercise the
executive right to the mineral interest. 
Id.  Day & Co. asserted that it owned the
executive right to this mineral interest because the severed executive right
was in the nature of a power of appointment. 
Id.  As a result, it could only be transferred by
express assignment under contract principles and not by implication under
principles of real property.  Id. 
Texland asserted that because the executive
right to the undivided 1/2 non-executive mineral interest was not expressly
reserved or excepted in the deed, the executive right
passed by implication to the Shoafs.  Id.  The Texas Supreme Court held that the
executive right to the undivided 1/2 non-executive mineral interest passed to
the Shoafs under the warranty deed, even though the
right was previously severed from the mineral estate, conveyed to another
party, and unmentioned in the warranty deed. 
Id. at
669-70.

In Lesley,
the Texas Supreme Court again held that executive rights not expressly reserved
or excepted in a deed pass under the deed.  352 S.W.3d at 486-87.  There, a developer named Bluegreen
acquired from Lesley approximately 4,100 acres of land to develop a residential
subdivision.  Lesley, 352 S.W.3d at 481, 484.  Lesley’s deeds reserved part of her undivided
1/2 mineral interest, but conveyed the executive right to the entire mineral
estate.  Id. at 481, 484-85.  When developing the subdivision, Bluegreen imposed restrictive covenants to limit oil and
gas development to protect lot owners from intrusive exploratory, drilling, and
production activities.  Id. at 481.  Bluegreen’s deeds
conveying the lots to the owners included its mineral interest, but excepted the mineral interests previously reserved to Lesley
and the owners of the other half of the mineral estate.  Id at 482, 486.  The
deeds, however, did not mention the executive right.  Id.

The discovery and
exploration of the Barnett Shale prompted Lesley and the owners of the other half of the mineral estate to sue Bluegreen for imposing
restrictive covenants that prevented mineral development.  Id. at 482.  One of the issues in the lawsuit was
whether Bluegreen’s deeds conveyed the executive
right to the lot owners.  Id. at 484.  The court held that because the deeds did not
except the executive right, but merely subjected its exercise to the covenant’s
limitations, “[b]y the rules of [Day
& Co., Inc.], Bluegreen’s deed to each lot conveyed the executive right
covering both the lot owner’s mineral interest and [Lesley’s mineral interest
and that of the owners of the other half of the mineral estate]. . . .”  Id. at 486-87.

The facts of this case compel an outcome
identical to those in Day & Co., Inc.
and Lesley.  Here, the original grantor conveyed part of
his mineral estate, but expressly reserved an interest in it.  Although the original grantor in this case
did not convey any of his executive rights, a portion of the executive rights
were inherited by the subsequent grantors, thus placing these grantors in a
position similar to that of the subsequent grantors in Day & Co., Inc. and Lesley.  Importantly, like the subsequent grantors in Day & Co., Inc. and Lesley, the subsequent grantors here
conveyed their interest in the mineral estate in two deeds that, like the deeds
in Day & Co., Inc. and Lesley, were silent as to the executive
right.  The two deeds in dispute here
conveyed to Vest the 4/9ths executive right owned by the Beckhams
because the deeds did not expressly reserve or except the executive right.  See Day & Co., Inc., 786 S.W.2d at 669-70; Lesley, 352 S.W.3d at 486-87.

In its brief, BNW does not argue that Day & Co., Inc. and Lesley are inapplicable.  Instead, BNW argues that it is unreasonable
to conclude that the parties intended to convey the entire executive right
owned by the Beckhams when the deeds in dispute are
construed pursuant to the principles of deed construction established in Luckel.  BNW is correct that nothing in the deeds
compels the conclusion that the parties intended to convey all of the executive
rights owned by the Beckhams.  By the same token, however, nothing in the
deeds bars the opposite conclusion: that the parties did not intend to convey all of the executive rights owned by the Beckhams.

As noted above, the deeds are silent as to
the executive rights owned by the Beckhams.  Moreover, nothing in the deeds’ language
reveals the parties’ intent regarding the executive rights.[6]  Although the “granting” clause, the “subject
to” clause, and the “future lease” clauses in each deed consistently identify
the mineral estate conveyed as the 1/3rd mineral estate in the “property” or
“lands,” none of these clauses provides any guidance in ascertaining whether
the parties intended to grant the entire executive right or only that incident
to the conveyance.[7]  Likewise, although the habendum clause in
each deed delineates the extent of the interest being granted as the
1/3rd mineral estate and all the rights
and appurtenances “thereto in any wise belonging,” the clause fails to identify
what those rights and appurtenances are.[8]  Consequently, this clause, like the others,
does not provide any guidance in ascertaining whether the parties intended to
grant the entire executive right or only that incident to the conveyance.  Indeed, it is precisely because the 4/9ths
executive right was neither reserved nor excepted in the deeds that, pursuant
to Day & Co., Inc. and Lesley, it passed to Vest.

Based on the foregoing, we are not persuaded
by BNW’s argument that the “four corners” of each deed establishes that the
parties intended to grant only the executive right incident to the 1/3rd
mineral estate conveyed to Vest. 
Accordingly, the trial court erred in concluding that only the executive
right incident to the 1/3rd mineral estate passed under the deeds and the
remaining 1/9th did not.  We therefore
sustain Anadarko’s first issue.  Having
done so, we do not find it necessary to reach Anadarko’s second issue.  See
Tex.R.App.P. 47.1.

CONCLUSION

            We reverse
the trial court’s judgment and render a take-nothing judgment in favor of Anadarko
Petroleum Corp.

 

 

November
30, 2012

                                                                        CHRISTOPHER ANTCLIFF,
Justice

 

Before
McClure, C.J., Rivera, and Antcliff, JJ.

 











[1]
A 1/3rd interest is equal to a 3/9ths
interest.  Thus, if, as BNW maintains,
only a 1/3rd (3/9ths) executive right was conveyed, then a 1/9th executive
right remained because 4/9ths minus 3/9ths equals 1/9th.





[2]
The Beckhams inherited 1/3rd of Edward’s mineral
estate because 4/9ths times 3/4ths equals 12/36ths,
which yields a 1/3rd interest. 
The Beckhams’ inherited 4/9ths of Edward’s
executive rights because the executive right attributable to the 3/4ths mineral
estate reserved by Edwards equals 12/36ths (4/9ths times 3/4ths) and the
executive right attributable to the 1/4th mineral estate conveyed to Haley
equals 4/36ths (4/9ths times 1/4th). 
When added together, 12/36ths plus 4/36ths equals 16/36ths, which yields
a 4/9ths interest.

 





[3]
Through subsequent conveyances not relevant to this appeal, Anadarko and BNW
each acquired their respective mineral interest.





[4]
Neither party contends that the deed is
ambiguous.





[5]
The five interests of a mineral estate are:
(1) the right to develop (the right of ingress and egress); (2) the right to
lease (the executive right); (3) the right to receive bonus payments; (4) the
right to receive delay rentals; and (5) the right to receive royalty payments.  Altman,
712 S.W.2d at 118.





[6]
The two deeds in dispute here are, in
essence, three-paragraph deeds.  Each
deed includes:  (1) a “granting” clause,
which is similar to other real property conveyances; (2) a “subject-to” clause,
which explains that the conveyance is subject to an existing lease; and (3) a
“future lease” clause, which provides for ownership rights after the existing lease
expires.  See Hernandez v. El Paso Production Co., No. 13-09-184-CV, 2011 WL
1442991, *4 (Tex.App.--Corpus Christi Apr. 14, 2011,
pet. denied)(mem. op.)(explaining
the form of such deeds).  Each deed also
contains a habendum clause, which is “[t]he part of an instrument, such
as a deed or will, that defines the extent of the interest being granted and
any conditions affecting the grant.” 
Black’s Law Dictionary 778 (9th ed. 2009).

 





[7]
The “granting” clause in each deed
conveys to Vest a 1/3rd “interest in the oil, gas and other minerals” in the
tracts of land relevant to this case. 
The “subject to” clause in each deed covers and includes all of the oil
royalty and gas rental or royalty due and to be paid under the terms of the
then-existing lease on the tracts.  The
“future lease” clause in each deed provides that the oil, gas, and mineral
privileges are to be owned entirely by Vest after the lease then in existence
expires.

 





[8]
The habendum clause in each deed provides
that Vest is “TO HAVE AND TO HOLD” the right and title to the specific tracts
of property in which the Beckhams owned a 1/3rd
mineral interest, “together with all and singular the rights and appurtenances
thereto in any wise belonging . . . .”