**NATURAL GAS PIPELINE COMPANY OF AMERICA, MidCon Gas Services Corp. and MC Panhandle, Inc., f/k/a Chesapeake Panhandle, Inc., by Reason of a Name Change, Now Known as Chesapeake Panhandle Limited Partnership, Appellants,**

v.

**Lois LAW, et al., Appellees.**

**No. 07–00–0157–CV.**

Court of Appeals of Texas, Amarillo.

March 28, 2001.

Rehearing Overruled June 26, 2001.

W. Alan Wright, Haynes and Boone, Dallas, Jesse R. Pierce, Clements O'Neill Pierce Nickens & Wilson, Houston, Bruce M. Kramer, Lubbock, Maston C. Courtney, Hinkle Hensley Shanor & Martin, Amarillo, for appellant.

James R. Loveell, Lovell & Lyle, Dumas, Joe L. Lovell, Lovell Lovell & Newsom, Amarillo, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

REAVIS, Justice.

Natural Gas Pipeline Company of America, MidCon Gas Services Corp., Chesapeake Panhandle Limited Partnership (formerly known as MC Panhandle, Inc. and Chesapeake Panhandle, Inc.), designated herein as "lessees," prosecute this appeal from the trial court's judgment following a jury trial declaring an oil and gas lease to have terminated by its own terms and awarding Lois Law, John H. Haas, Mary L. Engelke, Melvin R. Haas, Lawrence L. Haas, Lloyd R. Haas, Warren L. Haas, Floyd M. Haas, Wayne J. Haas, and Allen A. Haas, designated herein as "lessors," actual and exemplary damages and other relief. Presenting ten issues, lessees question whether (1) the trial court erred in disregarding the jury's finding that the lease was revived; (2) the trial court erred in disregarding the jury's finding that lessees' failure to produce gas was excused by laches; (3) the trial court erred in disregarding the jury's finding of adverse possession; (4) the trial court erred in granting partial summary judgment that the lease had terminated because of cessation of production; (5) the trial court erred in admitting the deposition testimony of a former employee because it was hearsay and not relevant; (6) the evidence was legally and factually sufficient to support the finding of fraud or malice and the award of exemplary damages; (7) the evidence was legally and factually sufficient to support the finding that lessees produced gas in bad faith; (8) damages for trespass or conversion are recoverable if lessors permitted lessees to remain on the property and produce gas after the alleged termination of the lease; (9) the lessors may recover damages for the four-year period preceding the filing of the underlying action; and (10) the judgment properly awarded lessors ownership of lessees' well and lease equipment. Based upon the rationale expressed herein, we reverse and render. Because our disposition of the appeal is based upon lessees' contention that the lease was revived, our consider-

ation of lessors' cross-points is unnecessary and we limit our review of the facts and procedural history to the matters material to that contention of revivor.

On March 11, 1933, Mary Haas, a widow, joined by her five sons, Arthur D., Clarence J., Henry J., Elmer L, and Charles H. Haas, all residents of the State of Illinois, executed an oil and gas lease covering two sections of land in Moore County, Texas, wherein Texoma Natural Gas Company was lessee, for a primary term of two years, and "as long thereafter as oil, gas, casinghead gas, casinghead gasoline or any of them is or can be produced." In 1934, a well known as Haas # 1 was completed as a natural gas well on Section 30. Then, in 1947, another natural gas well known as Haas # 3 was drilled and completed on Section 18. In 1950, Texhoma Natural Gas Company and Natural Gas Pipeline Company of America (NGPL), merged and thereafter by subsequent assignments, the lease was acquired by Chesapeake Panhandle Limited Partnership. One or both of the gas wells produced gas each month since the wells were completed, except that there was no production from either well for the months of August 1959, July 1960, June and July 1961, September 1963, and July and August 1964.

Contending that the lease had terminated because of cessations of production after the expiration of the primary term, lessors, the surviving family members of the original lessors, brought suit seeking a declaration that the lease had terminated and for damages for conversion of gas and for other relief. Among other defenses, lessees contended that the lessors' claims were barred, in whole or in part, by reasons of ratification, revivor, estoppel, quasi-estoppel, and waiver. Following consideration of lessors' motion for partial summary judgment, the trial court granted partial summary judgment that the oil and gas lease had lapsed due to one or more cessations of production, but otherwise the lessors' no-evidence motion for partial summary judgment directed to lessees' affirmative defenses and other matters was denied. When the remaining issues were submitted to the jury, in addition to findings favorable to the lessors as to the damage claims, the jury also returned findings favorable to lessees on their claim of adverse possession and also found that the lease had been revived. Notwithstanding the favorable jury findings on lessees' affirmative defense, the trial court denied lessees' motion for judgment based upon jury findings of adverse possession and revivor and rendered judgment declaring the lease to be extinguished in addition to the damage awards made based upon the jury findings.

By their first issue, lessees contend the trial court erred in disregarding the jury finding that the lease was revived. Because the parties, by their briefs herein, acknowledge that under this record revival of the lease is a question of law, our review will be focused on whether revivor was established as a matter of law.

## History

The last paragraph of the lease executed by Mrs. Haas and her sons provided that all payments due thereunder "shall be made to the credit of Henry J. Haas, as Trustee, in Commercial State Bank, Savanna, Illinois."[1] In addition to the lease,

1. Paragraph 10 of the lease provides in part: [i]f at any time there be as many as four parties entitled to rentals or royalties, lessee may withhold payments thereof unless and until all parties designate, in writing, in a recordable instrument, tobe [sic] filed with the lessee, a common agent to receive all payments due hereunder, and to execute

the original lessors also executed a written agreement designating and appointing Henry J. Haas as trustee and attorney-in-fact for the receipt and distribution of royalties and lease matters. The agreement was acknowledged before a notary public in Illinois and recorded in Moore County. According to the record, Henry J. Haas, in his capacity as trustee, wrote at least seven letters[2] to lessees inquiring about the diminished production or the absence of production. In addition, an attorney writing on behalf of lessors, by letter of September 23, 1973, discussing the implied obligation of the lessees to reasonably develop the premises and citing authority, acknowledged that the lease had "been held beyond the expiration of its primary term by production...." After receipt of the response of the lessees, the attorney, by letter of December 13, 1973, renewed the lessors' request for additional development.

On December 28, 1979, eight descendants or devisees/legatees of the original lessors signed an agreement referencing the lease, the family history as it related to title to the minerals and royalties, and appointing a successor trustee, as follows:[3]

AGREEMENT made this 28th day of December, 1979, between EMMA A. HAAS, CARRIE C. HAAS, DOROTHY M. HANDEL, LLOYD R. HAAS, JOHN H. HAAS, MARY L. ENGELKE, MELVIN R. HAAS, AND LAWRENCE L. HAAS,

(1) WITNESSETH that one Mary Haas, who died, intestate, in Jo Daviess County, Illinois, in 1939 was the owner of mineral rights on Section 30, in Block P Mc, and Section 18 in Block 26, EL & RR Survey in Moore County, Texas, **now subject** to an oil and gas lease **in favor of Natural Gas Pipeline Company of America, Lease # 8070–O & G, known as Mary Haas # 1 and # 3;**

(2) That said Mary Haas, at her death left her surviving HENRY J. HAAS, ELMER L. HAAS, ARTHUR D. HAAS, CHARLES H. HAAS and CLARENCE J. HAAS, her only children, as her only heirs;

(3) That said Arthur D. Haas died, intestate, November 14, 1952, a resident of Savanna, Illinois, leaving EMMA A. HAAS, his widow, and ALLEN HAAS, WAYNE HAAS and LOIS LAW, his only children, as sole heirs; That said children of Arthur D. Haas subsequently assigned their interest in said mineral rights and **lease** unto their Mother, Emma A. Haas;

(4) That said Elmer L. Haas died, testate, February 28, 1965, a resident of Savanna, Illinois, and in his will he bequeathed his entire estate unto his widow, CARRIE C. HAAS;

(5) That said Clarence J. Haas died, intestate, a resident of Mt. Carroll, Illinois, August 6, 1961, leaving ZELLA HAAS, his widow, and DOROTHY M. HANDEL and LLOYD R. HAAS, his only children, as sole heirs; That said Zella Haas died, intestate, a resident of Mt. Carroll, Illinois, November 9, 1976, leaving no husband, but leaving said DOROTHY M. HANDEL and LLOYD R. HAAS, her only children, as her sole heirs;

division and transfer orders on behalf of said parties, and their respective successors in title.

2. March 1944, April 1944, October 1959, August 1959, July 1970, March 1974, and October 1975.

3. Paragraphs have been numbered for reference purposes and all emphasis has been added.

(6) That said Charles H. Haas died, testate, a resident of Savanna, Illinois, November 4, 1975; That under a power of sale in the Last Will of said Charles H. Haas, his Executor conveyed his undivided 1/5 interest in said mineral rights and **lease** unto the said EMMA A. HAAS, CARRIE C. HAAS, HENRY J. HAAS, DOROTHY M. HANDEL and LLOYD HAAS;

(7) That said Henry J. Haas died, intestate, a resident of Jo Daviess County, Illinois, leaving no widow, but leaving the said JOHN H. HAAS, MARY L. ENGELKE, MELVIN R. HAAS and LAWRENCE L. HAAS, his only children, as sole heirs;

(8) That as a result of said deaths, the said mineral rights and **lease** are **now** owned in proportions as follows:

| | |
|---|---|
| Emma A. Haas, | 1/4 |
| Carrie C. Haas, | 1/4 |
| Lloyd R. Haas, | 1/8 |
| Dorothy M. Handel, | 1/8 |
| John H. Haas, | 1/16 |
| Mary L. Engelke, | 1/16 |
| Melvin R. Haas, | 1/16 |
| Lawrence L. Haas | 1/16 |

(9) That for many years, the said Henry J. Haas acted as trustee and agent for the various owners of said mineral rights and lease for purpose of collecting and distributing royalties accruing from said lease and paying taxes and expenses incident to said lease;

(10) That the Parties hereto are desirous of appointing the said MELVIN R. HAAS **as trustee** and agent for them to act in the same capacity as the said Henry J. Haas acted;

(11) It is therefore agreed by and between the Parties hereto that said MELVIN R. HAAS be, and he is hereby appointed as **trustee** and agent **for the purposes** of collecting and distributing said royalties accruing from **said lease** and paying taxes and expenses incident to said lease. It is further agreed that

said MELVIN R. HAAS shall be paid 2% of the gross royalties accruing in each year beginning with the year 1979 as and for his services as such trustee.

\* \* \*

Following the signatures of all the parties, the document concludes as follows:

Appointment accepted by Melvin R. Haas, this 28 day of December, 1979.

/s/——————————————
Melvin R. Haas

The agreement was then recorded in the deed records of Moore County. Ten months after the agreement was executed, Melvin R. Haas, as successor trustee, executed a division order dated October 3, 1980, directing lessees to pay the royalties to him in his capacity as Trustee. Mr. Haas also provided lessees with a copy of the December 28, 1979 agreement. Although the evidence did not include any probate or estate administration documentation regarding any of the Haas family members, the evidence shows that Lois R. Law and ten other members of the Haas family, the current lessors, signed another division order dated July 17, 1994, which included guaranty of title and ownership and designated that payment of royalties under the lease should be made to Lois R. Law. Then, in response to the July 1994 division order and a telephone call, by letter of August 1, 1994, lessees notified Ms. Law of various title requirements, including copies of recorded instruments evidencing transfer of titles or interests.

## Analysis

Lessees contend that the December 28, 1979 agreement revived the lease as a matter of law. We agree and commence our analysis of the agreement by observing that the agreement is a formal document, which appears to have been

professionally prepared and after it was signed, was recorded in the deed records of Moore County. Initially, we focus on paragraph (1) and in particular, the recitation that the two sections of land were "now subject to an oil and gas lease in favor of Natural Gas Pipeline Company of America, Lease # 8070 O & G, known as Mary Haas # 1 and # 3." A "subject to" clause is a limiting clause and qualifying term. *Cockrell v. Texas Gulf Sulphur Company*, 157 Tex. 10, 299 S.W.2d 672, 676–77 (1956). When the words "subject to" are used in a mineral deed, they mean "subordinate to," "subservient to," or "limited by." *Rosse v. Northern Pump Company*, 353 S.W.2d 287, 293 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.). Although the current lessors contend that the 1979 agreement of their predecessors-in-title did not revive the lease as a matter of law, they do not contend that their rights are not subject to limitations in the title of their predecessors, if any. *Klein v. First Nat. Bank of Chicago*, 266 S.W.2d 448, 449 (Tex.Civ.App.—Amarillo 1953, no writ). Because the paragraph also expressly identifies the lessee at the time of the agreement, describes the real estate, names the two wells, and provides the lease number, any uncertainty as to which property or lease was referenced is removed. It is important to note that the parties to the 1979 agreement were not parties to the original lease in 1933; rather, they had acquired their interests by devise or descent from their deceased family members. The adverb "now" preceding the "subject to" clause amounts to a recognition by the royalty owners that as of 1979, the lease was in force at the time the agreement was signed.

■ Paragraph (9) of the lease placed the burden of providing notice and documentation of a change in royalty ownership on the royalty owner. According to the evidence, the members of the Haas family were residents of Illinois and the original lessors were deceased by 1979; however, the evidence does not include any probate or estate administration documentation. In Texas, however, because section 37 of the Probate Code Annotated (Vernon Supp.2001) provides for the simultaneous vesting of title upon death, testate or intestate, a family settlement agreement is an alternative to formal administration of a decedent's estate and is a favorite of the law. *See Matter of Estate of Hodges*, 725 S.W.2d 265, 267 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.). A family settlement agreement cannot be avoided by a unilateral mistake of law by one party and will not be set aside for ordinary mistake of law or fact where all parties have the same knowledge or means of obtaining knowledge, in the absence of fraud or otherwise inequitable conduct. *Crossley v. Staley*, 988 S.W.2d 791, 796 (Tex.App.—Amarillo 1999, no pet.). As material here, the 1979 agreement constituted a family settlement in lieu of formal estate administration by which, among other things, the parties agreed to their respective interests in the minerals/royalties that had passed to them as descendants of the original lessors "now subject to" the lease.

The last (unnumbered) paragraph of the 1933 lease signed by Mary Haas and her sons provides as follows:

> The payments hereunder shall be made to the credit of Henry J. Haas, as Trustee, in Commercial State Bank, Savanna, Illinois.

Paragraph (9) of the 1979 agreement recognized that Henry had acted as trustee for many years. Because the lease provided that royalties would be payable to Henry, who was deceased, it was appropriate that a substitute trustee be appointed, and by paragraph (11) of the agreement, the family members appointed Melvin R. Haas

as trustee for the purposes of collecting and distributing "said royalties accruing from said lease and paying taxes and expenses incident to said lease." Also, they agreed that the trustee would be paid two percent of the gross royalties "beginning with the year 1979" for his services. The agreement was entitled to be recorded, Tex.Prop.Code Ann. § 12.001 (Vernon Supp.2001), and the evidence reflects that it was recorded. Therefore, its recording constituted notice to all persons of the existence of the instrument. *See* Tex. Prop.Code Ann. § 13.002 (Vernon 1984); *First S. & L. Ass'n of El Paso v. Avila,* 538 S.W.2d 846, 849 (Tex.Civ.App–El Paso 1976, writ ref'd n.r.e.).

■ The phrase "subject to the terms of said lease" in a subsequent deed constituted a recognition of an ineffective lease in *Grissom v. Anderson,* 125 Tex. 26, 79 S.W.2d 619, 621 (1935). Then, in *Humble Oil & Refining Co. v. Clark,* 126 Tex. 262, 87 S.W.2d 471, 474 (1935), the Court held that the execution of a deed after the oil and gas lease had allegedly terminated, wherein the lease was treated as still subsisting, constituted a revival of the lease. Later, in *Loeffler v. King,* 149 Tex. 626, 236 S.W.2d 772, 774 (1951), the Court approved the holding of the trial court that acceptance of a deed amounted to a revival of a lease under the applicable record. The rule that requires us to presume that the parties to a contract intend every clause to have some effect, *Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996), has unusual significance here because it precludes a decision which, in effect, would ignore the clause "now subject to an oil and gas lease" contained in paragraph (1) of the agreement.

Citing *Westbrook v. Atlantic Richfield Co.,* 502 S.W.2d 551 (Tex.1973), lessors

contend the agreement does not constitute a revival because it is not sufficient as a conveyance. However, lessors do not contend that the agreement was ambiguous or that the clause "now subject to an oil and gas lease" was included in the contract by fraud, accident, or mistake, and do not suggest any theory or present any authority that would allow us to disregard the clause. Moreover, *Westbrook* is not controlling because of significant factual distinctions and the documentation is not comparable. In *Westbrook,* Atlantic did not contend that the Murpheys had executed any deed or lease "subject to or acknowledging the Murphey Garrett lease." *Id.* at 553. Further, at the time the Murpheys executed the agreement, they owned no royalty interest, where, as here, the lessors appointed a new trustee for the express purpose of receiving and distributing royalties.

Also, in *Westbrook,* the Court was careful to note that the instrument did not contain an affirmative statement relating to the validity of underlying interests. However, the 1979 agreement of the lessors presented here indicates that the parties considered that they owned royalties and affirmatively declared that the land, which was adequately identified, was "subject to" the lease. Also, in *Anadarko Petroleum Corp. v. Thompson, et al.,* 60 S.W.3d 134, 142 (Tex.App.—Amarillo 2000, pet. granted), this Court noted that *Westbrook,* 502 S.W.2d at 555, made reference to the fact that the instrument did not demonstrate "an intent to refer to a particular lease" or contain an "express reference" to the former lease. However, it is important to note that in *Westbrook,* multiple leases[4] were included in the unit agreement where, as here, only one lease is involved. Further, contrary to lessors'

---

4. *See Atlantic Richfield Company v. Westbrook,* 491 S.W.2d 207, 213 (Tex.Civ.App.— Tyler 1972), *rev'd, Westbrook v. Atlantic Richfield Company,* 502 S.W.2d 551 (Tex.1973).

contention, the reference to the lease in the 1979 agreement is not a casual reference; rather, the agreement here (1) described the property, (2) named the current lessee, not the lessee originally named in the lease, (3) set out the lease number, (4) identified the trustee for royalty payments named in the original lease and appointed a new trustee "for the purposes of collecting and distributing said royalties accruing from said lease," and (5) identified the two gas wells. Unlike *Westbrook* and *Anadarko*, the description in the 1979 agreement is sufficient to constitute a reference to a particular lease and amounts to "the subsequent execution of a formal document ... which expressly recognizes in clear language the validity of a lifeless deed or lease...." *Natural Gas Pipeline Co. of America v. Pool*, 30 S.W.3d 618, 628 (Tex.App.—Amarillo 2000, pet. granted).

∎ Next, relying on sections 91.401 and 91.402 of the Texas Natural Resources Code Annotated (Vernon 1993 & Supp. 2001), lessors argue that the 1979 agreement does not constitute a revivor because the execution of a division order does not revive a lease. However, those sections are not controlling for several reasons. First, the statutory form for a division order provides that a division order is terminable by either party on 30 days written notice. Tex.Nat.Res.Code Ann. § 91.402(g) (Vernon Supp.2001). We also note that the division order signed by Melvin R. Haas on October 3, 1980, and the division order signed by the current lessors effective July 17, 1994, both provided that they were effective "until further notice." Here, however, the 1979 agreement does not provide that it is revocable or that it shall be effective until further notice. Second, assuming but not deciding, that lessors' contention is otherwise correct, the 1979 agreement is not a division order as described in the statute. Instead, it is a multi-purpose document containing the agreement of the family members as to their undivided interests and appointing a trustee to collect the royalties. The fact that it was attached to a document entitled "division order," effective "until further notice" signed by only Melvin R. Haas, the trustee, ten months after its execution did not operate to amend the agreement to make it revocable, or otherwise convert the 1979 agreement into a division order. Finally, the statutory provisions do not apply to the 1979 agreement because the provisions were not enacted until 1983 and do not have retroactive effect that would alter substantive rights. *See* Act of May 12, 1983, 68th Leg., R.S., ch. 228, § 1, 1983 Tex.Gen.Laws 966; *see also Davis v. State*, 846 S.W.2d 564, 569 (Tex.App.—Austin 1993, no pet.).

Lessors do not challenge the effect of a "subject to" clause in an instrument affecting real estate or oil and gas and do not contend that the 1979 agreement was ambiguous or that the "now subject to" clause was included by fraud, accident or mistake. Applying the recognized meaning of the "subject to" clause and the presumption that the parties to the 1979 agreement intended the "now subject to" clause to have some effect in context with the remaining provisions of the agreement as well as the other analysis above, we conclude that the 1979 agreement operated to revive the lease as a matter of law. Thus, we sustain lessees' first issue and overrule lessors' cross-point to that issue. Our sustension of lessees' first issue pretermits our consideration of the remaining issues and cross-points because they are not necessary to final disposition of this appeal. See Tex.R.App.P. 47.1.

Accordingly, because the judgment that Lois Law, John H. Haas, Mary L. Engelke, Melvin R. Haas, Lawrence L. Haas, Lloyd R. Haas, Warren L. Haas, Floyd M. Haas, Wayne J. Haas, and Allen A. Haas

recover their damages and other relief against Natural Gas Pipeline Company of America, MidCon Gas Services Corp., Chesapeake Panhandle Limited Partnership (formerly known as MC Panhandle, Inc. and Chesapeake Panhandle, Inc.), was predicated on the determination that the oil and gas lease had expired when the trial court granted partial summary judgment, and we have sustained lessees' first issue regarding revivor, the judgment that Lois Law and the other lessors recover their damages and other relief is reversed and judgment is hereby rendered that they take and recover nothing against Natural Gas Pipeline Company of America, MidCon Gas Services Corp., and Chesapeake Panhandle Limited Partnership (formerly known as MC Panhandle, Inc. and Chesapeake Panhandle, Inc.).