COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-198-CV

SUN-KEY OIL COMPANY, INC. APPELLANT

V.

CATHERINE ANNE WHEALY APPELLEE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Sun-Key Oil Company, Inc. appeals the trial court’s grant of Appellee Catherine Whealy’s motion for partial summary judgment and the denial of its own motion for partial summary judgment.

On November 1, 1999, Morton and Linda Gray executed an oil and gas lease (“the Gray lease”) with Appellant Sun-Key Oil Company, Inc.  The lease describes the land conveyed as:

Being 150 acres of land out of the S/2 of the John Hibbins Survey, Abstract #225 and 162.1 acres out of the John Hibbins Survey, Abstract #225 being described in two parcels as follows:  Parcel #1:  containing 111.3 acres and Parcel #2:  containing 49.8 acres.

The lease does not more specifically describe the parcels conveyed and thus on its face does not show what portion of the John Hibbins Survey is covered by the lease.

After the execution of the Gray lease, Catherine Whealy (“Whealy”) became the owner of 148.525 acres (“Tract A”), covered by the same John Hibbins Survey, by a deed from the Benjamin Bernard Udd and Dovie G. Udd Living Trust, dated August 3, 2001.  The Grays had previously conveyed the tract to the trust.  Whealy is also the owner of a 251.429-acre tract (“Tract B”), covered by the same John Hibbins Survey.  Sun-Key operated a producing gas well on Tract B.  In March 2005, Sun-Key executed a Gas Well Production Agreement (“Agreement”) with Whealy.  The Agreement states that Sun-Key had previously claimed an interest in the gas well by virtue of the Gray lease.  In the Agreement, Sun-Key recognized that at the time of the lease’s execution, the Grays owned no mineral interest in Tract B and thus that the lease was not effective to cover that property.

In the Agreement, Whealy granted Sun-Key a right to operate the gas well on her property.  Sun-Key agreed to pay her 18.83% of the proceeds it received from the sale of the well’s gas production.  The payments were to be received no later than thirty days after Sun-Key received payment from its buyer.  The Agreement provided for automatic termination of the Agreement if Sun-Key did not make the payments as provided by the Agreement.

On April 6, 2005, the Grays executed a mineral deed covering Tract A to Whealy.  The deed stated that it was “subject to” the Gray lease and another lease not at issue here (this second lease has terminated and neither party argues it is still in effect) and reserved to the Grays a nonparticipating royalty interest in the event the leases should become cancelled or forfeited.  On that same date, Whealy filed her original petition 
in the trial court asking that the court declare void the lease between Sun-Key and the Grays on the ground that the lease did not adequately describe the leased property.  Both Sun-Key and the Grays were originally named in the suit, but Whealy’s claims against the Grays were later severed from this proceeding.

On September 28, 2005, after the filing of this lawsuit, the Grays and Sun-Key executed an Amendment of Oil, Gas, and Mineral Lease in order to provide an adequate legal description of the property covered by the lease.  The amendment stated it was to be effective retroactive to the date of the original lease, November 1, 1999.  We are unable to determine from the record to what extent, if any, the land described in the amendment includes any of Tract A. In November 2005, Whealy filed an amended pleading in which she sought additional declaratory relief regarding the Agreement.  Whealy claimed that the payments owed to her under the Agreement for April 2005 production had not been timely made, and therefore the Agreement had ended automatically according to its terms.  She also made associated claims for damages for trespass and conversion and for injunctive relief.

Whealy filed a motion for partial summary judgment on the issues that the Gray lease was void and the Agreement had terminated.  As in her pleadings, she argued that because the lease did not adequately describe the property, it failed to comply with the statute of frauds and the statute of conveyances and therefore conveyed no interest to Sun-Key.  Whealy also argued that the Agreement had ended according to its terms because Sun-Key had not made timely production payments.

In response, Sun-Key argued that (1) the land description as amended was sufficient to meet legal requirements, and (2) by accepting the mineral deed from the Grays “subject to” the Gray’s lease with Sun-Key, Whealy is foreclosed from denying the Gray lease’s validity under the doctrine of revivor.  Sun-Key also filed for partial summary judgment that Whealy take nothing on her claim that the Gray lease was void.

The trial court granted Whealy’s motion for partial summary judgment and denied Sun-Key’s motion for partial summary judgment.  The parties then settled the remaining claims, and by agreement of the parties enforcement of the judgment was suspended pending appeal.

Sun-Key brings three points on appeal.  Sun-Key argues that the trial court erred by (1) finding as a matter of law that the Agreement had expired by its own terms, and (2) denying its motion for partial summary judgment as to the sufficiency of the legal description in the Gray lease.  Finally, Sun-Key argues that Whealy is foreclosed from asserting the invalidity of the Gray lease.  Because we hold that the summary judgment proof demonstrated that the Gas Production Agreement had ended by its own terms, that no issue of material fact existed as to the invalidity of the oil and gas lease, and that Whealy was not foreclosed from arguing the lease’s invalidity, we affirm the trial court’s judgment.

Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.
(footnote: 2)  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.
(footnote: 3)
 When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
(footnote: 4)  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.
(footnote: 5)  The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.
(footnote: 6)  
When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.
(footnote: 7)  
The reviewing court should render the judgment that the trial court should have rendered.
(footnote: 8)
Analysis

Termination of the Gas Well Production Agreement

Conditions that may result in forfeiture are not favored by the law.
(footnote: 9)  A court will find forfeiture only where the contract clearly and unequivocally allows for it.
(footnote: 10)  Courts must enforce contracts as written;
(footnote: 11) we
 may not rewrite a contract “while professing to construe it.”
(footnote: 12)
 The Agreement states that “[t]he failure of [Sun-Key] to deliver such proceeds to [Whealy] within thirty (30) days of receipt by [Sun-Key], of such sale or transfer [of the gas from her well] 
shall immediately and automatically
 
terminate all rights and interest 
of [Sun-Key], hereunder.”  [Emphasis added.] Sun-Key argues that because forfeitures are not favored in the law, this court should not construe this provision so as to terminate the Agreement.  But the Agreement provides in clear and unequivocal language that Whealy’s remedy for Sun-Key’s failure to fully perform is automatic termination.

The record shows that Sun-Key did not tender the full payment for April 2005 production due to Whealy within the thirty-day time limit.  Sun-Key received payment for April production on June 2, 2005.  Sun-Key owed Whealy $1,446.72 for the April production, which under the terms of the Agreement was due to her by July 2, 2005.  Sun-Key claimed it tendered a check to Whealy on June 10, 2005, for $722.32.  Whealy claims that she never received this check, but even if she had received it, Sun-Key would still have not timely met its full obligation to her under the Agreement.  Sun-Key did not tender the full amount owed to Whealy until November 2, well after the July 2 deadline.  Because Sun-Key did not timely tender the full amount, the Agreement terminated by its own terms.  We therefore overrule Sun-Key’s first point.

Validity
 
of the Gray Lease

In its second point, Sun-Key asserts that the trial court erred by finding the Gray lease void.  Because the Gray lease conveys an interest in real property, it must comply with the statute of frauds to be valid.
(footnote: 13)  
To satisfy the statute of frauds, a writing conveying an interest in property must supply data sufficient to identify the property “with reasonable certainty.”
(footnote: 14) 
 
A metes and bounds description is not required,
(footnote: 15) but merely describing “an unidentified portion of a larger, identifiable tract is not sufficient.”
(footnote: 16)
 The only description in the lease identified the leased property as some of the acreage out of the larger tract covered by the John Hibbins Survey.  The information provided does not allow the property conveyed in the lease to be identified with reasonable certainty.  The lease therefore did not comply with the statute of frauds and was void.
(footnote: 17)
 Sun-Key argues that the lease does comply with the statute of frauds because the amendment executed by the Grays in 2005 cured any description deficiency in the original lease.  We do not decide the effect of this amendment as between Sun-Key and the Grays, but the amendment does not make the lease effective against Whealy.  Even assuming the lease could become valid upon execution of the lease amendment, the amendment was not signed until after the Grays granted the mineral deed to Whealy.  After the Grays conveyed the mineral estate to Whealy, they no longer had any right or ability to execute an oil and gas lease covering her property.
(footnote: 18)  Sun-Key therefore can have no interest in Whealy’s property based on the Gray lease.  We overrule Sun-Key’s second point.

In its final point, Sun-Key maintains that Whealy is foreclosed from asserting the inadequacy of the description under the doctrine of revivor because Whealy accepted the mineral deed “subject to” the Gray lease.  Sun-Key 
argues that under the doctrine of revivor, “a lifeless lease is revived by the subsequent execution of a formal document which expressly recognizes in clear language the validity of the lifeless lease.”
(footnote: 19)  Sun-Key asserts that Whealy has revived the lease and is bound by it.  The doctrines of revivor and ratification are frequently confused and are often used interchangeably.
(footnote: 20)  Revivor applies where the original, effective grant conveyed an interest that has now terminated.
(footnote: 21)  Revivor does not apply here because the Gray lease was not a valid grant that terminated on its own terms; it was void from its inception
.  Sun-Key is actually arguing ratification.

Ratification is the analogous doctrine applying to conveyances, such as mineral leases or deeds, that are inoperative or invalid, rather than terminated.
(footnote: 22) 
Like revivor, ratification requires “the subsequent execution of a formal document” that “expressly recognized in clear language the validity” of the void or inoperative conveyance.
(footnote: 23) 
 The term “subject to,” when used in a conveyance, “is a term of qualification and not of contract,”
(footnote: 24) 
and means “subservient to” or “limited by.”
(footnote: 25)  Nothing in the use of the term “would even hint at the creation of affirmative rights.”
(footnote: 26)  Such a clause in a mineral deed serves to protect the grantor’s warranty and limit what the deed purports to grant.
(footnote: 27)  Because the mineral deed’s grant was made “subject to” the Gray lease, the lease was incorporated into the deed, and Whealy took the deed subject to that limitation in the title conveyed to her.
(footnote: 28)  If the lease were valid, the lease would be effective against her.
(footnote: 29)  The lease in this case, however, was void, and thus the question here is whether Whealy ratified the void lease by accepting the deed, as Sun-Key contends.

In this case, Whealy could not ratify the lease because the invalidating feature of the lease had not been removed.
(footnote: 30)  When Whealy accepted the mineral deed, the Gray lease did not contain an adequate property description.  As the Texas Supreme Court pointed out in 
Lowe v. Ragland
, the general rule that “an ineffective instrument may yet have some effect on a later valid instrument” referring to it “does not mean that the reference will necessarily have effect in every case.”
(footnote: 31)  In 
Lowe
, there was a question as to the sufficiency of the description contained in three deeds.
(footnote: 32)  In those three deeds, the owner of an estate conveyed portions of a larger owned tract, and then, nearly ten years later, executed yet another deed.
(footnote: 33)  The fourth deed purported to cover the entire tract “subject to” the previous three deeds.
(footnote: 34)  The court addressed among other things the issue of whether the first three deeds could serve as exceptions in the fourth deed if the three deeds lacked a sufficient land description.  The court stated that “deeds can in no event serve as exceptions if they describe nothing.”
(footnote: 35)  The court then remanded the case to the trial court to determine whether the descriptions were, under the circumstances, sufficient to make the deeds valid.
(footnote: 36)
 We do not need to remand this case to the trial court for such a determination because the description in the original Gray lease is insufficient as a matter of law.  The later amendment by the Grays cannot alter this result because if Whealy took the deed subject to nothing but the nonparticipating royalty interest, then at the time of the amendment, Whealy, not the Grays, had the executive right.  Whealy therefore possesses the exclusive right to execute a mineral lease on her property.
(footnote: 37)  Because the “subject to” language in the mineral deed neither ratifies nor revives the Gray lease to make it effective against Whealy, we overrule Sun-Key’s third point.

We deny Whealy’s request for sanctions.

Conclusion

Having overruled Sun-Key’s three points, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  November 2, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant
,
 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).

3:
Sw. Elec. Power Co.
,
 
73 S.W.3d at 215.

4:
Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).

5:
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

6:
Clear Creek Basin
, 589 S.W.2d at 678.

7:
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 872 (Tex. 2000).

8:
Id
.

9:
Hearne v. Bradshaw
, 158 Tex. 453, 312 S.W.2d 948, 951 (1958); 
Dobson v. Dobson
, 594 S.W.2d 177, 180 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref’d n.r.e.).

10:
Christie, Mitchell & Mitchell Co. v. Selz
, 313 S.W.2d 352, 354 (Tex. Civ. App.–Fort Worth 1958, writ dism'd).

11:
Royal Indem. Co. v. Marshall
, 388 S.W.2d 176, 181 (Tex. 1965).

12:
Gen. Am. Indem. Co. v. Pepper
, 161 Tex. 263, 339 S.W.2d 660, 661 (Tex. 1960); 
Sw. Gas Pipeline
,
 Inc. v. Scaling
, 870 S.W.2d 180, 183 (Tex. App.—Fort Worth 1994, writ denied).

13:
Tex. Bus. & Com. Code Ann.
 § 26.01(b) (Vernon Supp. 2006).

14:
Tex. Builders v. Keller
, 928 S.W.2d 479, 481 (Tex. 1996); 
Morrow v. Shotwell
, 477 S.W.2d 538, 539 (Tex. 1972)
.

15:
Tex. Builders
, 928 S.W.2d at 481-82 (“For example, a contract that provides for sale of ‘my ranch of 2200 acres’ is sufficient, where extrinsic evidence shows that the grantor owned one ranch, which indeed contained 2200 acres.”).

16:
Id
. at 482.

17:
See Republic Nat'l Bank v. Stetson
, 390 S.W.2d 257, 261 (Tex. 1965); 
Hanzel v. Herring
, 80 S.W.3d 167, 172 (Tex. App.—Fort Worth 2002, no pet.).

18:
See
 
McCall v. McCall
, 24 S.W.3d 508, 513 n.7 (Tex. App.–Houston [1st Dist.] 2000, pet. denied) (
“The owner of the executive right possesses the exclusive right to lease the minerals.”)
 
(citing 
Mathews v. Sun Oil Co.
, 425 S.W.2d 330, 332-33 (Tex. 1968)).

19:
Cannon v. Sun-Key Oil Co.
,
 Inc.
, 117 S.W.3d 416, 419 (Tex. App.—Eastland 2003, pet. denied).

20:
Bradley v. Avery
, 746 S.W.2d 341, 344 (Tex. App.—Austin 1988, no writ).

21:
Id
. (citing 2 
Howard R. Williams & Charles J. Meyers, Oil and Gas Law
, § 340.04, at 256 (1986)).

22:
I
d
.

23:
Hastings v. Pichinson
, 370 S.W.2d 1, 4 (Tex. Civ. App.—San Antonio 1963, no writ).

24:
Kokernot v. Caldwell
, 231 S.W.2d 528, 531 (Tex. Civ. App.—Dallas 1950, writ ref’d).

25:
Cockrell v. Tex. Gulf Sulphur Co.
, 157 Tex. 10, 299 S.W.2d 672, 676 (Tex. 1957); 
Natural Gas Pipeline Co. of Am. v. Law
, 65 S.W.3d 121, 126 (Tex. App.—Amarillo 2001, pet. denied).

26:
Kokernot
, 231 S.W.2d at 531.

27:
Averyt v. Grande
,
 Inc.
, 686 S.W.2d 632, 634 (Tex. App.—Texarkana 1984), 
aff’d
, 717 S.W.2d 891 (Tex. 1986).

28:
See
 
id.
;
 Natural Gas Pipeline Co.
, 65 S.W.3d at 126.

29:
See Lowe v. Ragland
, 156 Tex. 504, 297 S.W.2d 668, 673 (Tex. 1957).

30:
See id.
 at 672.

31:
Id.
 at 671.

32:
Id.
 at 670.

33:
Id.
 at 669.

34:
Id.
 at 670.

35:
Id. 
at 672.

36:
Id.
 at 673.

37:
See
 
McCall
, 24 S.W.3d at 513.