COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-198-CV

 

 

SUN-KEY OIL COMPANY, INC.                                               APPELLANT

 

                                                   V.

 

CATHERINE ANNE WHEALY                                                     APPELLEE

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Sun-Key Oil
Company, Inc. appeals the trial court=s grant of Appellee Catherine Whealy=s motion for partial summary judgment and the denial of its own motion
for partial summary judgment.








On November 1, 1999, Morton
and Linda Gray executed an oil and gas lease (Athe Gray lease@) with
Appellant Sun-Key Oil Company, Inc.  The
lease describes the land conveyed as:

Being
150 acres of land out of the S/2 of the John Hibbins Survey, Abstract #225 and
162.1 acres out of the John Hibbins Survey, Abstract #225 being described in
two parcels as follows:  Parcel #1:  containing 111.3 acres and Parcel #2:  containing 49.8 acres.

 

The lease does not more specifically describe the
parcels conveyed and thus on its face does not show what portion of the John
Hibbins Survey is covered by the lease.








After the execution of the
Gray lease, Catherine Whealy (AWhealy@) became the
owner of 148.525 acres (ATract A@), covered by the same John Hibbins Survey, by a deed from the Benjamin
Bernard Udd and Dovie G. Udd Living Trust, dated August 3, 2001.  The Grays had previously conveyed the tract
to the trust.  Whealy is also the owner
of a 251.429-acre tract (ATract B@), covered by the same John Hibbins Survey.  Sun‑Key operated a producing gas well
on Tract B.  In March 2005, Sun-Key
executed a Gas Well Production Agreement (AAgreement@) with
Whealy.  The Agreement states that
Sun-Key had previously claimed an interest in the gas well by virtue of the
Gray lease.  In the Agreement, Sun-Key
recognized that at the time of the lease=s execution, the Grays owned no mineral interest in Tract B and thus
that the lease was not effective to cover that property.

In the Agreement, Whealy
granted Sun-Key a right to operate the gas well on her property.  Sun-Key agreed to pay her 18.83% of the
proceeds it received from the sale of the well=s gas production.  The payments
were to be received no later than thirty days after Sun-Key received payment
from its buyer.  The Agreement provided
for automatic termination of the Agreement if Sun-Key did not make the payments
as provided by the Agreement.

On April 6, 2005, the Grays
executed a mineral deed covering Tract A to Whealy.  The deed stated that it was Asubject to@ the Gray
lease and another lease not at issue here (this second lease has terminated and
neither party argues it is still in effect) and reserved to the Grays a
nonparticipating royalty interest in the event the leases should become
cancelled or forfeited.  On that same
date, Whealy filed her original petition in the trial court asking that the
court declare void the lease between Sun-Key and the Grays on the ground that
the lease did not adequately describe the leased property.  Both Sun-Key and the Grays were originally
named in the suit, but Whealy=s claims against the Grays were later severed from this proceeding.








On September 28, 2005, after
the filing of this lawsuit, the Grays and Sun-Key executed an Amendment of Oil,
Gas, and Mineral Lease in order to provide an adequate legal description of the
property covered by the lease.  The
amendment stated it was to be effective retroactive to the date of the original
lease, November 1, 1999.  We are unable
to determine from the record to what extent, if any, the land described in the
amendment includes any of Tract A.       In
November 2005, Whealy filed an amended pleading in which she sought additional
declaratory relief regarding the Agreement. 
Whealy claimed that the payments owed to her under the Agreement for
April 2005 production had not been timely made, and therefore the Agreement had
ended automatically according to its terms. 
She also made associated claims for damages for trespass and conversion
and for injunctive relief.

Whealy filed a motion for
partial summary judgment on the issues that the Gray lease was void and the
Agreement had terminated.  As in her
pleadings, she argued that because the lease did not adequately describe the property,
it failed to comply with the statute of frauds and the statute of conveyances
and therefore conveyed no interest to Sun-Key. 
Whealy also argued that the Agreement had ended according to its terms
because Sun-Key had not made timely production payments.








In response, Sun-Key argued
that (1) the land description as amended was sufficient to meet legal
requirements, and (2) by accepting the mineral deed from the Grays Asubject to@ the Gray=s lease with Sun-Key, Whealy is foreclosed from denying the Gray lease=s validity under the doctrine of revivor.  Sun-Key also filed for partial summary
judgment that Whealy take nothing on her claim that the Gray lease was void.

The trial court granted
Whealy=s motion for partial summary judgment and denied Sun-Key=s motion for partial summary judgment. 
The parties then settled the remaining claims, and by agreement of the
parties enforcement of the judgment was suspended pending appeal.

Sun-Key brings three points
on appeal.  Sun-Key argues that the trial
court erred by (1) finding as a matter of law that the Agreement had expired by
its own terms, and (2) denying its motion for partial summary judgment as to the
sufficiency of the legal description in the Gray lease.  Finally, Sun-Key argues that Whealy is
foreclosed from asserting the invalidity of the Gray lease.  Because we hold that the summary judgment
proof demonstrated that the Gas Production Agreement had ended by its own
terms, that no issue of material fact existed as to the invalidity of the oil
and gas lease, and that Whealy was not foreclosed from arguing the lease=s invalidity, we affirm the trial court=s judgment.

Standard
of Review








In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law.[2]  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.[3]








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.[4]  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.[5]  The summary judgment will be affirmed only if
the record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of
action or defense as a matter of law.[6]  When both parties move for summary judgment
and the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary judgment evidence and determine all questions presented.[7]  The reviewing court should render the
judgment that the trial court should have rendered.[8]

Analysis

Termination of the Gas Well Production
Agreement

Conditions that may result in
forfeiture are not favored by the law.[9]  A court will find forfeiture only where the
contract clearly and unequivocally allows for it.[10]  Courts must enforce contracts as written;[11]
we may not rewrite a contract Awhile professing to construe it.@[12]








The Agreement states that A[t]he failure of [Sun-Key] to deliver such proceeds to [Whealy] within
thirty (30) days of receipt by [Sun-Key], of such sale or transfer [of the gas
from her well] shall immediately and automatically terminate all rights and
interest of [Sun-Key], hereunder.@  [Emphasis added.] Sun-Key
argues that because forfeitures are not favored in the law, this court should
not construe this provision so as to terminate the Agreement.  But the Agreement provides in clear and
unequivocal language that Whealy=s remedy for Sun-Key=s failure to fully perform is automatic termination.

The record shows that Sun-Key
did not tender the full payment for April 2005 production due to Whealy within
the thirty-day time limit.  Sun-Key
received payment for April production on June 2, 2005.  Sun-Key owed Whealy $1,446.72 for the April
production, which under the terms of the Agreement was due to her by July 2,
2005.  Sun-Key claimed it tendered a
check to Whealy on June 10, 2005, for $722.32. 
Whealy claims that she never received this check, but even if she had
received it, Sun-Key would still have not timely met its full obligation to her
under the Agreement.  Sun-Key did not
tender the full amount owed to Whealy until November 2, well after the July 2
deadline.  Because Sun-Key did not timely
tender the full amount, the Agreement terminated by its own terms.  We therefore overrule Sun-Key=s first point.

 

 

 








Validity of the Gray Lease

In its second point, Sun-Key
asserts that the trial court erred by finding the Gray lease void.  Because the Gray lease conveys an interest in
real property, it must comply with the statute of frauds to be valid.[13]  To
satisfy the statute of frauds, a writing conveying an interest in property must
supply data sufficient to identify the property Awith reasonable certainty.@[14]  A metes and bounds
description is not required,[15]
but merely describing Aan
unidentified portion of a larger, identifiable tract is not sufficient.@[16]








The only description in the
lease identified the leased property as some of the acreage out of the larger
tract covered by the John Hibbins Survey. 
The information provided does not allow the property conveyed in the
lease to be identified with reasonable certainty.  The lease therefore did not comply with the
statute of frauds and was void.[17]

Sun-Key argues that the lease
does comply with the statute of frauds because the amendment executed by the
Grays in 2005 cured any description deficiency in the original lease.  We do not decide the effect of this amendment
as between Sun-Key and the Grays, but the amendment does not make the lease
effective against Whealy.  Even assuming
the lease could become valid upon execution of the lease amendment, the
amendment was not signed until after the Grays granted the mineral deed to
Whealy.  After the Grays conveyed the
mineral estate to Whealy, they no longer had any right or ability to execute an
oil and gas lease covering her property.[18]  Sun-Key therefore can have no interest in
Whealy=s property based on the Gray lease. 
We overrule Sun-Key=s second point.








In its final point, Sun-Key
maintains that Whealy is foreclosed from asserting the inadequacy of the
description under the doctrine of revivor because Whealy accepted the mineral
deed Asubject to@ the Gray
lease.  Sun-Key argues that under the
doctrine of revivor, Aa lifeless
lease is revived by the subsequent execution of a formal document which
expressly recognizes in clear language the validity of the lifeless lease.@[19]  Sun-Key asserts that Whealy
has revived the lease and is bound by it. 
The doctrines of revivor and ratification are frequently confused and
are often used interchangeably.[20]  Revivor applies where the original, effective
grant conveyed an interest that has now terminated.[21]  Revivor does not apply here because the Gray
lease was not a valid grant that terminated on its own terms; it was void from
its inception.  Sun-Key is actually
arguing ratification.













Ratification is the analogous
doctrine applying to conveyances, such as mineral leases or deeds, that are
inoperative or invalid, rather than terminated.[22]
Like revivor, ratification requires Athe subsequent execution of a formal document@ that Aexpressly
recognized in clear language the validity@ of the void or inoperative conveyance.[23]  The term Asubject to,@ when used
in a conveyance, Ais a term of
qualification and not of contract,@[24] and means Asubservient to@ or Alimited by.@[25]  Nothing in the use of the term
Awould even hint at the creation of affirmative rights.@[26]  Such a clause in a mineral
deed serves to protect the grantor=s warranty and limit what the deed purports to grant.[27]  Because the mineral deed=s grant was made Asubject to@ the Gray
lease, the lease was incorporated into the deed, and Whealy took the deed
subject to that limitation in the title conveyed to her.[28]  If the lease were valid, the lease would be
effective against her.[29]  The lease in this case, however, was void,
and thus the question here is whether Whealy ratified the void lease by
accepting the deed, as Sun-Key contends.








In this case, Whealy could
not ratify the lease because the invalidating feature of the lease had not been
removed.[30]  When Whealy accepted the mineral deed, the
Gray lease did not contain an adequate property description.  As the Texas Supreme Court pointed out in Lowe
v. Ragland, the general rule that Aan ineffective instrument may yet have some effect on a later valid
instrument@ referring
to it Adoes not mean that the reference will necessarily have effect in every
case.@[31]  In Lowe, there was a
question as to the sufficiency of the description contained in three deeds.[32]  In those three deeds, the owner of an estate
conveyed portions of a larger owned tract, and then, nearly ten years later,
executed yet another deed.[33]  The fourth deed purported to cover the entire
tract Asubject to@ the
previous three deeds.[34]  The court addressed among other things the
issue of whether the first three deeds could serve as exceptions in the fourth
deed if the three deeds lacked a sufficient land description.  The court stated that Adeeds can in no event serve as exceptions if they describe nothing.@[35]  The court then remanded the
case to the trial court to determine whether the descriptions were, under the
circumstances, sufficient to make the deeds valid.[36]

We do not need to remand this
case to the trial court for such a determination because the description in the
original Gray lease is insufficient as a matter of law.  The later amendment by the Grays cannot alter
this result because if Whealy took the deed subject to nothing but the
nonparticipating royalty interest, then at the time of the amendment, Whealy,
not the Grays, had the executive right. 
Whealy therefore possesses the exclusive right to execute a mineral
lease on her property.[37]  Because the Asubject to@ language in
the mineral deed neither ratifies nor revives the Gray lease to make it
effective against Whealy, we overrule Sun-Key=s third point.

We deny Whealy=s request for sanctions.

 

 

 








Conclusion

Having overruled Sun-Key=s three points, we affirm the trial court=s judgment.

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL B:   DAUPHINOT, HOLMAN, and
GARDNER, JJ.

DELIVERED: 
November 2, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]Tex. R. Civ. P. 166a(c); Sw. Elec. Power
Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).





[3]Sw.
Elec. Power Co., 73 S.W.3d at 215.





[4]Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).





[5]Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391
S.W.2d 41, 47 (Tex. 1965).





[6]Clear
Creek Basin, 589 S.W.2d at 678.





[7]FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex.
2000).





[8]Id.





[9]Hearne
v. Bradshaw, 158 Tex. 453, 312 S.W.2d 948, 951 (1958); Dobson
v. Dobson, 594 S.W.2d 177, 180 (Tex. Civ. App.CHouston
[1st Dist.] 1980, writ ref=d n.r.e.).





[10]Christie,
Mitchell & Mitchell Co. v. Selz, 313 S.W.2d 352, 354 (Tex.
Civ. App.BFort
Worth 1958, writ dism'd).





[11]Royal
Indem. Co. v. Marshall, 388 S.W.2d 176, 181 (Tex. 1965).





[12]Gen.
Am. Indem. Co. v. Pepper, 161 Tex. 263, 339 S.W.2d 660, 661 (Tex.
1960); Sw. Gas Pipeline, Inc. v. Scaling, 870 S.W.2d 180, 183
(Tex. App.CFort
Worth 1994, writ denied).





[13]Tex. Bus. & Com. Code Ann. '
26.01(b) (Vernon Supp. 2006).





[14]Tex.
Builders v. Keller, 928 S.W.2d 479, 481 (Tex. 1996); Morrow v.
Shotwell, 477 S.W.2d 538, 539 (Tex. 1972).





[15]Tex.
Builders, 928 S.W.2d at 481-82 (AFor
example, a contract that provides for sale of >my
ranch of 2200 acres= is
sufficient, where extrinsic evidence shows that the grantor owned one ranch,
which indeed contained 2200 acres.@).





[16]Id. at
482.





[17]See
Republic Nat'l Bank v. Stetson, 390 S.W.2d 257, 261 (Tex.
1965); Hanzel v. Herring, 80 S.W.3d 167, 172 (Tex. App.CFort
Worth 2002, no pet.).





[18]See McCall
v. McCall, 24 S.W.3d 508, 513 n.7 (Tex. App.BHouston
[1st Dist.] 2000, pet. denied) (AThe owner of the executive
right possesses the exclusive right to lease the minerals.@) (citing
Mathews v. Sun Oil Co., 425 S.W.2d 330, 332-33 (Tex. 1968)).





[19]Cannon
v. Sun‑Key Oil Co., Inc., 117 S.W.3d 416, 419 (Tex.
App.CEastland
2003, pet. denied).





[20]Bradley
v. Avery, 746 S.W.2d 341, 344 (Tex. App.CAustin
1988, no writ).





[21]Id.
(citing 2 Howard R. Williams &
Charles J. Meyers, Oil and Gas Law, ' 340.04, at 256 (1986)).





[22]Id.





[23]Hastings
v. Pichinson, 370 S.W.2d 1, 4 (Tex. Civ. App.CSan
Antonio 1963, no writ).





[24]Kokernot
v. Caldwell, 231 S.W.2d 528, 531 (Tex. Civ. App.CDallas
1950, writ ref=d).





[25]Cockrell
v. Tex. Gulf Sulphur Co., 157 Tex. 10, 299 S.W.2d 672, 676 (Tex.
1957); Natural Gas Pipeline Co. of Am. v. Law, 65 S.W.3d 121, 126 (Tex.
App.CAmarillo
2001, pet. denied).





[26]Kokernot, 231
S.W.2d at 531.





[27]Averyt
v. Grande, Inc., 686 S.W.2d 632, 634 (Tex. App.CTexarkana
1984), aff=d, 717
S.W.2d 891 (Tex. 1986).





[28]See id.;
Natural Gas Pipeline Co., 65 S.W.3d at 126.





[29]See
Lowe v. Ragland, 156 Tex. 504, 297 S.W.2d 668, 673 (Tex. 1957).





[30]See
id. at 672.





[31]Id. at
671.





[32]Id. at
670.





[33]Id. at
669.





[34]Id. at
670.





[35]Id. at
672.





[36]Id. at
673.





[37]See McCall,
24 S.W.3d at 513.